A01A2094. BOWLING v. FOSTER et al.

(562 SE2d 776)

POPE, Presiding Judge.

Wanda Bowling appeals from a directed verdict entered in her medical malpractice action against John Irving Foster III, M.D., and his employer, Atlanta Center for Athletes, Inc. She also appeals the trial court's dismissal of her claims against William G. Sutlive III, M.D., and Rick K. St. Pierre, M.D. We affirm the directed verdict in part and reverse in part, and we affirm the dismissal of the claims against Sutlive and St. Pierre.

Bowling sought treatment from Atlanta Center for pain in both her feet, which she indicated she had been experiencing for approximately one year. On February 7, 1995, Sutlive, a general practitioner, examined Bowling and diagnosed her with Morton's neuroma, a painful condition involving an inflamed nerve in between the toes of the foot. Sutlive told Bowling to avoid wearing high-heeled shoes and prescribed an anti-inflammatory. Bowling did not fill the prescription, but instead took aspirin.

She returned on March 14, 1995, and reported little change in her condition. Sutlive referred Bowling to Foster, an Atlanta Center orthopedic surgeon, for evaluation. That day, Bowling signed a consent form for surgery to remove the neuromas. On March 20, 1995, Foster met with Bowling to confirm the diagnosis and to discuss the surgical option. Bowling stated that neither Sutlive nor Foster ever discussed the possible use of steroid injections as an alternative to surgery.

Foster operated on both of Bowling's feet on March 30. Foster testified that although he intended to remove the neuromas during the operation, he determined several weeks later after seeing a pathologist's report that he had actually removed adjacent tissue and not the neuromas. Foster testified, however, that during the operation he cut the ligaments overlying the affected nerves in order to get to the neuromas. He stated that cutting the ligament to relieve pressure is one method of treating this condition that has a success rate of 40 to 80 percent. The success rate when a neuroma is removed is in the range of 90 percent. Although Foster realized that he had not removed the neuromas, he stated that he hoped Bowling's condition would improve from the release of pressure.

Bowling testified that during her first post-operative visit, Foster told her that he would know "within in a week or so" whether he had helped her. When Bowling continued to experience pain, she said Foster told her that the pain was probably the result of scar tissue and never disclosed that he had failed to remove the neuromas. Foster administered steroid injections at her third post-operative visit. He said he recommended that option in lieu of additional surgery because he was waiting to see if she would improve without it.

When the injections did not bring Bowling relief, she consulted another doctor for a second opinion. Bowling requested that Foster's office forward her records to the doctor, but the evidence showed that the forwarded records did not include Sutlive's notes or the pathology report showing that the neuromas had not been removed. The records sent also erroneously reflected that Bowling had received steroid injections prior to surgery. The second doctor recommended that she return to Foster for additional treatment. Bowling opted to consult a third doctor, Perry Julien, a podiatrist. Julien eventually performed additional surgery in October 1995 and removed the neuromas from Bowling's feet.

1. In Bowling's initial complaint, she alleged that Foster and Atlanta Center committed malpractice by failing to exhaust more conservative treatments prior to surgery and for failing to inform her after surgery that he had not removed the neuromas. She also asserted that Foster's failure to inform her of the results of the operation constituted a breach of fiduciary duty, a breach of a private duty

and constructive fraud. Bowling later amended her complaint to assert a claim of battery against Foster and Atlanta Center on the sole ground that the surgery was performed without exhausting more conservative treatment options first.

In her pre-trial order, Bowling modified her claims again. In addition to the claims previously asserted against Foster and Atlanta Center, she contended that the failure to exhaust more conservative treatment options also constituted a breach of a private duty. She further alleged that Foster had intentionally misrepresented that her post-operative pain was attributable to scar tissue. Bowling also asserted in the pre-trial order that the failure by Foster and Atlanta Center to send complete and accurate records to Bowling's second doctor demonstrated bad faith, entitling her to an award of attorney fees.

At the close of Bowling's evidence, the trial court granted a motion for directed verdict on these claims; Bowling takes issue with this ruling.

> A directed verdict is proper only if there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a verdict. OCGA § 9-11-50 (a). In determining whether any conflict in the evidence exists, the court must construe the evidence most favorably to the party opposing the motion for directed verdict. The standard used to review the grant or denial of a directed verdict is the any evidence test.

(Citation and punctuation omitted.) *City of Columbus v. Barngrover*, 250 Ga. App. 589, 593-594 (552 SE2d 536) (2001).

Bowling's claims against Foster and Atlanta Center arise out of both their pre-operative and post-operative conduct, and we will address each separately.[1]

(a) *Pre-operative.* Bowling asserts that it was error for the trial court to direct a verdict as to her claims arising from the failure to pursue the more conservative option of steroid treatments prior to surgery.

In order to succeed on her claim for medical malpractice, Bowling was required to show three elements: "(1) the duty inherent in the doctor-patient relationship; (2) breach of that duty by failing to

---

[1] Bowling asserted no claims in her complaints or in the pre-trial order directly arising from the failure of Foster to remove the neuromas during her first surgery. Nor did she ask to amend her pre-trial order to include such claims. To the extent that she is asserting such claims on this appeal, we will not consider them. See *Dept. of Human Resources v. Phillips*, 268 Ga. 316, 318 (1) (486 SE2d 851) (1997); *Hightower v. Kendall Co.*, 225 Ga. App. 71, 72 (3) (483 SE2d 294) (1997).

exercise the requisite degree of skill and care; and (3) that this failure be the proximate cause of the injury sustained." (Citation and punctuation omitted.) *Cannon v. Jeffries*, 250 Ga. App. 371, 372-373 (1) (551 SE2d 777) (2001). There is a presumption in medical malpractice cases that the physician performed in an ordinarily, skillful manner, so the burden is upon the plaintiff to show a want of due care or skill. *Killingsworth v. Poon*, 167 Ga. App. 653, 654 (307 SE2d 123) (1983). It is not sufficient to show that the testifying doctor would have done something differently. *McNabb v. Landis*, 223 Ga. App. 894, 896 (5) (479 SE2d 194) (1996). Therefore, a plaintiff is usually required to "offer expert medical testimony to the effect that the defendant-doctor failed to exercise that degree of care and skill which would ordinarily have been employed by the medical profession generally *under the circumstances*." (Citation omitted; emphasis supplied.) *Killingsworth v. Poon*, 167 Ga. App. at 655.

Bowling did not present the testimony of her medical expert at trial, but rather relied upon the testimony of Julien, the podiatrist who performed the second round of operations on her feet. Other than testifying that he would have treated Bowling with steroid injections first, the only testimony Julien gave on the subject was an affirmative response to a general question regarding the standard of care in treating Morton's neuroma: "Q: Do you believe the standard of care requires you to try steroid injections on a patient before surgery? A: Yes."

We do not find this generalized testimony sufficient to establish the standard of care in this case. Julien was never asked and he never testified that Foster deviated from the standard of care under the circumstances of this case. For example, Bowling had been experiencing foot pain for approximately one year before seeking treatment. Foster testified that under those circumstances he believed that it was not inappropriate to pursue a surgical option before attempting steroid injections. But Julien never addressed whether prolonged pain could affect the standard of care, and, in fact, he did not recall that Bowling told him she had been experiencing pain for that length of time. Thus, Julien never directly addressed the particular circumstances of Bowling's case as presented to Foster. In fact, he never specifically testified regarding the propriety of Foster's treatment of Bowling at all; rather, he testified as to his own treatment.

Because there was no testimony from any doctor or expert that Foster deviated from the standard of care under the circumstances of this case, the evidence did not support a claim for medical malpractice. Compare, e.g., *Jackson v. Gershon*, 251 Ga. 577, 578-579 (308 SE2d 164) (1983) (testimony of doctor who subsequently treated patient specifically addressing what defendant-doctor should have

done held sufficient to create a jury issue in medical malpractice case). Nor do we find that the propriety of administering steroid injections prior to surgery in a case of Morton's neuroma falls within the exceptions to the general rule requiring expert testimony. See *Killingsworth*, 167 Ga. App. at 655.

But even if Julien's testimony was sufficient to present a jury question on medical malpractice, Bowling's claim would not succeed because she failed to present any evidence of causation. In order to prove causation, Bowling was required to show more than the mere possibility that giving her the option of steroid injections would have prevented surgery:

> Negligence alone is insufficient to sustain recovery. It must be proven that the injury complained of proximately resulted from [a] want of care or skill. A bare possibility of such result is not sufficient. Additionally, there can be no recovery for medical negligence involving an injury to the patient where there is no showing to any reasonable degree of medical certainty that the injury could have been avoided.

(Citation and punctuation omitted.) *Cannon v. Jeffries*, 250 Ga. App. at 373.

Bowling presented no evidence that the surgery could have been avoided had steroid injections been administered first. Indeed, Bowling's counsel conceded as much at trial. Bowling also failed to present any testimony that the failure to administer steroid injections caused any other injury. There was no testimony, for example, that it could have affected the surgery or her post-operative recovery. The trial court, therefore, properly granted a directed verdict on Bowling's medical malpractice claim.

In addition, we find that Bowling could not assert a separate claim for breach of a private duty under OCGA § 51-1-8 arising out of the same conduct. Under Georgia's informed consent statute, a physician is required to inform the patient of the practical alternatives to surgery "which are generally recognized and accepted by reasonably prudent physicians." OCGA § 31-9-6.1 (a) (5). But that statute also provides that the failure to comply with its requirements does not give rise to a separate cause of action, although it may give rise to a claim for medical malpractice. OCGA § 31-9-6.1 (d). Our Supreme Court has interpreted that provision to mean that "a medical provider's failure to make the requisite disclosures does not constitute an independent cause of action, but rather may *only* give rise to and support a claim of professional negligence." (Emphasis supplied.) See *Albany Urology Clinic v. Cleveland*, 272 Ga. 296, 300 (2) (528 SE2d 777) (2000) (discussing fraud claim). Moreover, the private duty Fos-

ter owed Bowling is defined by the applicable standard of care, which the evidence failed to establish. Accordingly, we find that Bowling may not pursue a separate action for breach of a private duty arising out of Foster's alleged failure to inform her of the alternative of using steroid injections.

We further find that the trial court properly directed a verdict on Bowling's battery claim arising out of the failure to offer steroid injections. While Bowling does have a right to pursue a battery claim independent of her medical malpractice claim,[2] that claim is negated by the consent form she signed in this case. A claim for battery arises from "any unauthorized and unprivileged contact by a doctor with his patient in examination, treatment or surgery." (Citation and punctuation omitted.) *Harris v. Leader*, 231 Ga. App. 709, 710 (1) (a) (499 SE2d 374) (1998). But there can be no such tort where the patient consents to the contact. Id.

Here, Bowling signed a form consenting to the surgery performed by Foster. And although he did not successfully perform that surgery, the evidence showed that he only had contact with the area of Bowling's body covered by the consent form. The question then becomes whether the consent was valid. "The law expressly recognizes that it was not valid if it was obtained by fraudulent misrepresentations of material facts. See OCGA § 31-9-6. Mere negligence is not enough." (Citation and punctuation omitted.) *Smith v. Wilfong*, 218 Ga. App. 503, 507 (2) (462 SE2d 163) (1995).

While Bowling asserts that Foster never informed her that steroid injections were an alternative to surgery, there is no evidence that such an omission was in any way fraudulent. Accordingly, Bowling is bound by the consent form, and the trial court correctly directed a verdict on her battery claim.

(b) *Post-operative.* Bowling also claims error in the trial court's directed verdict on her claims arising out of Foster's post-operative treatment. She asserted claims for medical malpractice, breach of fiduciary duty, breach of a private duty and fraud[3] arising out of Foster's failure to inform her that he had not removed the neuroma from either foot and his representation that her post-operative pain could be attributed to scar tissue.

Although Bowling asserted a medical malpractice claim arising out of this conduct, the expert affidavit attached to her complaint did

---

[2] *Joiner v. Lee*, 197 Ga. App. 754, 756 (1) (399 SE2d 516) (1990).

[3] While Bowling is now arguing a battery claim arising out of this conduct, she never asserted such a claim in her complaints or the pre-trial order, nor did she seek leave to amend the pre-trial order. Therefore, we will not consider such an argument. See *Dept. of Human Resources v. Phillips*, 268 Ga. at 318 (1); *Hightower v. Kendall Co.*, 225 Ga. App. at 72 (3).

not address any of Foster's post-operative conduct. Moreover, she presented no expert testimony that Foster's failure to disclose the results of the operation deviated from the standard of care. And while Bowling contends that Sutlive testified that the standard of care required the disclosure of the results of the operation, that testimony came from Sutlive's deposition. At trial, Sutlive acknowledged his earlier testimony but stated that as a general practitioner, he did not feel qualified to pass judgment on Foster's actions as a surgeon.

We find that the evidence falls short of establishing the standard of care under the circumstances of this case. Nor do we believe that the conduct at issue falls within those cases where the courts have found an exception to the general rule that expert testimony is required to establish the standard of care. Foster testified, without contradiction, that although he did not remove the neuromas, there was a 40-80 percent chance that the surgery could have alleviated Bowling's pain and he waited to determine if that had occurred before discussing additional surgery. Accordingly, expert testimony was required to demonstrate whether the standard of care required Foster to reveal the results of the surgery by the time of the last post-operative appointment, and Bowling failed to present such testimony. Thus, a directed verdict was proper as to her medical malpractice claim under these facts.

Further, a directed verdict was appropriate as to Bowling's claims for breach of fiduciary duty, breach of a private duty and fraud to the extent that they were based merely upon Foster's failure to reveal the results of the surgery prior to administering the post-operative steroid injections, as Bowling is limited to recovery under the law of medical malpractice for such claims. See *Albany Urology Clinic v. Cleveland*, 272 Ga. at 300 (2); OCGA § 31-9-6.1 (d).

Nevertheless, we find that the trial court erred in dismissing all of Bowling's claims because she alleges something more than a mere failure to inform. She also asserts that Foster actively misled her by attributing her post-operative pain to scar tissue, rather than the failure to remove the neuromas. Bowling testified that based upon Foster's representations she blamed herself for her failure to get better, thinking she was just "not working hard enough to recover," and did not know what course to take. In addition, the evidence showed that after Bowling requested that her records be forwarded to her second doctor, Foster and Atlanta Center failed to send the pathology report that would have revealed that Foster had not removed the neuromas. They also failed to send Sutlive's records, which contain no reference to pre-operative steroid injections, but did send Foster's records, which inaccurately indicated that she had received such injections. While Foster and Atlanta Center presented testimony to explain their actions, we find there was sufficient evidence to present

a jury question on Bowling's claims for fraud, breach of fiduciary duty and breach of a private duty arising out of this conduct.

No expert testimony was necessary to get these claims before a jury because the claims do not require proof of a professional standard of care:

> Not every claim which calls into question the conduct of one who happens to be a professional is a professional malpractice claim requiring expert testimony or an OCGA § 9-11-9.1 affidavit. It is only where the claim is based upon the failure of the professional to meet the requisite standards of the subject profession that the necessity to establish such standards and the violation thereof by expert testimony for the guidance of the jury arises.

(Citation and punctuation omitted.) *Boggs v. Bosley Med. Institute*, 228 Ga. App. 598, 600 (1) (a) (492 SE2d 264) (1997). In other words, "no expert testimony is required to establish that it is improper for (physicians) to defraud their clients." Id. See also *Lloyd v. Kramer*, 233 Ga. App. 372, 375 (1) (503 SE2d 632) (1998). Accordingly, we reverse the directed verdict as to these claims.

2. Bowling also asserts that the trial court erred in dismissing her claims against Sutlive and St. Pierre. Bowling initially alleged claims for breach of fiduciary duty, breach of a private duty and constructive and actual fraud against Sutlive, St. Pierre and Atlanta Center on the ground that she was billed at a surgeon's rate under St. Pierre's name for her visits with Sutlive, a general practitioner. Bowling later filed a "Second Amended Complaint in Tort for Medical Malpractice and Fraud" on July 12, 1999, withdrawing her factual allegations relating to the excessive bill. The second complaint then alleged for the first time that Sutlive had improperly scheduled Bowling for surgery in the name of surgeon St. Pierre. The amendment purported to substitute these factual allegations for the allegations of overbilling in the original complaint. Sutlive and St. Pierre moved to dismiss these claims on statute of limitation grounds and for the failure of Bowling to attach an expert medical affidavit. The trial court granted the motion.

Based upon our review of the record and after considering the parties' arguments, we find that the dismissal of these claims was proper.

*Judgment affirmed in part and reversed in part. Blackburn, C. J., and Mikell, J., concur.*

DECIDED MARCH 21, 2002.

*Neal H. Howard & Associates, Neal H. Howard, Joann Brown-Williams, William D. James, Debra S. Robinson,* for appellant.
*Carlock, Copeland, Semler & Stair, Mary K. Greene, Michael A. Strickland,* for appellees.