### A06A0914. MURRAH v. FENDER et al.
(639 SE2d 595)

BERNES, Judge.

This appeal involves the question of whether appellees were required to contemporaneously file an expert affidavit with their complaint in order to avoid dismissal. Because we conclude that the appellees' allegations of fraud, misrepresentation, and deceit fall outside of the scope of OCGA § 9-11-9.1, we affirm the trial court's denial of appellant's motion to dismiss.

On review from the grant of a motion to dismiss, "we treat all well-pled material allegations by the nonmovant as true and all denials by the movant as false." (Citation and punctuation omitted.) *Shuler v. Hicks, Massey & Gardner, LLP*, 280 Ga. App. 738, 740 (1) (b) (634 SE2d 786) (2006). According to the complaint, appellee Ira E. Fender was admitted into the South Georgia Medical Center ("SGMC") on February 18, 2003 with chest pains and an abnormal stress test. He was diagnosed with coronary disease and advised that he should undergo heart bypass surgery. Appellant Charles P. Murrah, M.D. discussed the need for surgery with Fender.

Fender alleges that during this discussion, he informed Murrah that he wanted to have the surgery performed at Tallahassee Memorial Hospital. Fender claims that he believed that Tallahassee Memorial had better equipment and more experienced physicians than

---

[22] (Punctuation and footnotes omitted.) *In the Interest of F. C.*, 248 Ga. App. 675, 679 (2) (549 SE2d 125) (2001).

SGMC, since heart surgery was a relatively new procedure being offered at SGMC. Fender contends that Murrah assured him that SGMC "had the very same equipment as at Tallahassee Memorial Hospital and that [Fender's] surgery could be performed at [SGMC] just as well as it could at Tallahassee."[1] Based upon Murrah's representation, Fender asserts that he agreed to allow the surgery to be performed at SGMC.

Fender alleges that Murrah assisted the doctor who actually performed the surgery. When the doctors opened Fender's sternum, they encountered an unexpected complication in that Fender's aorta was extensively calcified. They determined that the traditional method of cardiopulmonary bypass surgery, during which a machine is used to oxygenate and pump blood into the aorta while the heart is stopped from beating, presented too great a risk of embolization or stroke. They concluded that it was instead necessary to use the off-pump technique, during which the coronary artery to be bypassed is stabilized with special suction devices but the heart is not stopped from beating. Because SGMC did not have the equipment necessary to perform the alternative bypass method, the doctors had to close Fender's chest and transport him to Tallahassee Memorial so that the surgery could be completed. The off-pump bypass surgery was subsequently successfully completed by a surgeon at Tallahassee Memorial.

Fender alleges that he suffered hypotension due to blood loss during transit to Tallahassee Memorial and required a blood transfusion upon arrival to the hospital. Fender further contends that the hypotension resulted in a loss of blood flow to his eye which left his vision permanently impaired. He asserts that the impairment to his vision was a direct result of his need to be transferred mid-surgery to Tallahassee Memorial, which occurred as a direct result of Murrah's intentional misrepresentation to him that SGMC was as equipped for heart bypass surgeries as Tallahassee Memorial. These allegations form the basis of his claims for fraud, misrepresentation, and deceit against Murrah.

1. OCGA § 9-11-9.1 mandates that any action alleging professional malpractice be accompanied by an expert affidavit setting forth "at least one negligent act or omission claimed to exist and the factual basis for each such claim." Our Supreme Court has limited the application of OCGA § 9-11-9.1 to actions for professional negligence. *Labovitz v. Hopkinson*, 271 Ga. 330, 334-336 (3) (519 SE2d 672)

---

[1] Fender contends that Murrah was motivated to encourage heart surgery patients to go to SGMC because SGMC, a relatively new facility for heart surgeries, needed to prove that it had the patient base to sustain the costs associated with providing quality care and to otherwise establish itself as a state-of-the-art heart surgery center.

(1999). Thus, we have repeatedly held that complaints asserting claims for intentional misconduct against a professional, including fraud and misrepresentation, do not require the inclusion of an expert affidavit. See *Howell v. Shumans*, 281 Ga. App. 459, 460 (636 SE2d 182) (2006); *Shuler*, 280 Ga. App. at 741 (1) (b); *Smith v. Morris, Manning & Martin, LLP*, 264 Ga. App. 24, 26-27 (589 SE2d 840) (2003); *Johnson v. Rodier*, 242 Ga. App. 496, 497 (1) (529 SE2d 442) (2000). See also *Bowling v. Foster*, 254 Ga. App. 374, 380-381 (1) (b) (562 SE2d 776) (2002); *Boggs v. Bosley Med. Institute*, 228 Ga. App. 598, 600 (1) (a) (492 SE2d 264) (1997).

Fender clearly alleges intentional misconduct by Murrah. We are bound by the directive of the Supreme Court and our prior precedent to hold that his claims fall outside of the purview of OCGA § 9-11-9.1.

The facts and issues raised in the dissent are not those contained in this appeal. Fender does not assert that Murrah committed fraud by telling him that the traditional method of bypass surgery would be appropriate for him when the doctor knew it would not be. Fender asserts instead that, after he expressed his preference to have his surgery performed at Tallahassee Memorial because he believed that Tallahassee Memorial had better equipment and more experienced physicians, Murrah told him that SGMC "had the very same equipment as at Tallahassee Memorial Hospital and that [his] surgery could be performed at [SGMC] just as well as it could at Tallahassee." Thus, the complaint alleges that Murrah's statement was a statement of fact about the equipment available at both hospitals, and Fender further alleges the doctor knowingly and intentionally misrepresented the nature and quality of the equipment available at the local hospital because the doctor, for his own private reasons, wanted to encourage patients to have their surgery performed locally.

No question of professional judgment was involved in making the statement about the equipment; either the local hospital "*had the very same equipment* as at" Tallahassee Memorial or it did not. Thus, contrary to the position taken in the dissent, this is a case about the hospitals' equipment, and not a case about which of the two medical procedures was appropriate for Fender's condition, or whether the local hospital's equipment was appropriate for Fender's operation.

2. Murrah also contends that Fender was required to file an expert affidavit under the terms of Georgia's implied consent statute, since Fender alleges Murrah failed to disclose a material risk of the surgery. See OCGA § 31-9-6.1 (d). However, Fender alleges something more than mere failure to disclose a known risk. He alleges that Murrah affirmatively and intentionally misled him with respect to the equipment available at SGMC, and did so for the purpose of

inducing him to having the surgery performed at that facility. Accordingly, his allegations fall outside of the scope of OCGA § 31-9-6.1. See *Bowling*, 254 Ga. App. at 380-381 (1) (b).

*Judgment affirmed. Johnson, P. J., Blackburn, P. J., Barnes, Miller and Ellington, JJ., concur. Andrews, P. J., dissents.*

ANDREWS, Presiding Judge, dissenting.

I must respectfully dissent because the decision by a physician regarding which of two medical procedures available is appropriate for treatment of a patient calls for the exercise of professional judgment, the claimed breach of which requires the filing of an affidavit pursuant to OCGA § 9-11-9.1.

Having examined Fender and evaluated his condition, Dr. Murrah made the professional judgment that the traditional method of bypass surgery would be appropriate to treat Fender. The statements he made to Fender regarding the equipment available at South Georgia Medical Center were premised on his judgment regarding treatment.

The complaint contains no allegation that, at the time he made the statements to Fender, Dr. Murrah was aware of the problem with Fender's aorta which would require the use of the "off pump" method. Any reading of the allegations of the complaint to include Dr. Murrah's failure to have foreseen the possibility of such a complication would implicitly require professional judgment and, therefore, the filing of the affidavit required by OCGA § 9-11-9.1. See *Brown v. Tift Health Care*, 279 Ga. App. 164, 166-167 (630 SE2d 788) (2006); *Goodin v. Gwinnett Health System*, 273 Ga. App. 461, 462 (2) (615 SE2d 129) (2005); *Peterson v. Columbus Med. Center Foundation*, 243 Ga. App. 749, 754 (2) (533 SE2d 749) (2000).

DECIDED NOVEMBER 30, 2006 — 

*Coleman, Talley, Newbern, Kurrie, Preston & Holland, Wade H. Coleman, Gregory T. Talley, Edward F. Preston*, for appellant.

*Timothy L. Eidson, Berrien L. Sutton, Ronald W. Hallman*, for appellees.