A08A1725. COLLINS et al. v. DICKMAN et al.
(672 SE2d 433)

ANDREWS, Judge.

On appeal in this medical malpractice action, William Larry Collins and his wife Gail argue that the trial court erred when it granted summary judgment to Dr. Kenneth Kress and his professional corporation, Resurgens, P.C.; Dr. Sheryl Dickman; and Northside Hospital, Inc. ("the defendants") on grounds including that the Collinses' first medical expert was not qualified, that their second expert affidavit was filed in violation of orders terminating discovery, and that a nurse's affidavit and testimony failed to establish proximate causation concerning the negligence of Northside nurses. We affirm.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." (Citations and punctuation omitted.) *Walker v. Gwinnett Hosp. System*, 263 Ga. App. 554, 555 (588 SE2d 441) (2003). A trial court's grant of summary judgment is reviewed de novo on appeal, construing the evidence in the light most favorable to the nonmovant. *Ethridge v. Davis*, 243 Ga. App. 11, 12 (530 SE2d 477) (2000). Once the party moving for summary judgment has made a prima facie showing that it is entitled to judgment as a matter of law, the nonmovant must then come forward with rebuttal evidence suffi-

cient to show the existence of a genuine issue of material fact. *Weldon v. Del Taco Corp.*, 194 Ga. App. 174 (390 SE2d 87) (1990).

So viewed, the record shows that on August 31, 2000, after another doctor administered an epidural for pain control, Dr. Kress replaced both of Collins's knees. The post-operative orders in the case included to notify a doctor if Collins developed low blood pressure. When Collins's blood pressure dropped to 99 over 55, Dr. Kress's answering service was notified. By the time Dr. Dickman went to Collins's bedside, his blood pressure had improved, but he was nonresponsive. After stopping the epidural drip and administering a drug intended to reverse any decrease in blood pressure, Dr. Dickman restarted the epidural at a lower dose. At 10:15 p.m., Dr. Kress ordered the epidural stopped until Collins was fully awake and requesting pain medication. At 1:30 the next morning, Collins could not move his left arm, squeeze his left hand, or feel the nurse touching his left foot. Further tests showed that he had suffered a stroke.

In July 2002, Collins and his wife sued the defendants for medical malpractice. Two months after the trial court ordered the completion of all expert depositions, the Collinses filed a motion to permit the identification of two additional experts. On August 29, 2005, the Collinses voluntarily dismissed their action before the trial court had ruled on their motion. The next day, August 30, 2005, they filed this renewal action attaching the expert affidavits of Dr. Norman Ernst, M.D., and Charles Smith, R.N.

In October 2006, Dr. Kress and Resurgens moved for summary judgment on the ground that Dr. Ernst's affidavit had failed to state a violation of the standard of care and that he was not qualified to testify as an expert under OCGA § 24-9-67.1. On April 30, 2007, the trial court held a case management conference and asked whether any discovery remained to be done. The parties agreed that only the depositions of two treating physicians remained. The judge then entered a scheduling order allowing for these two outstanding depositions to be taken by May 30, 2007, and noting that "[n]o extensions of discovery will be permitted, except by Order of this Court and only upon a showing of good cause."

On June 29, 2007, however, the Collinses filed an additional expert affidavit from Dr. Allan Shang. The defendants moved to exclude Dr. Shang's affidavit on the ground that its inclusion was in violation of the trial court's scheduling order. On December 28, 2007, the trial court granted the motions to exclude Dr. Shang's affidavit. The trial court then granted summary judgment to Dr. Kress, Resurgens, and Dr. Dickman on the grounds that Dr. Ernst was not qualified to offer expert testimony, had withdrawn his affidavit testimony that Dr. Kress had violated his standard of care, and had

stated that Dr. Dickman's acts were not the proximate cause of Collins's injuries. The trial court also granted summary judgment to Northside. This appeal followed.

1. The Collinses first argue that the trial court erred when it excluded Dr. Shang's affidavit. We disagree.

> Trial judges have broad discretion in controlling discovery, including imposition of sanctions, and appellate courts will not reverse a trial court's decision on such matters unless there has been a clear abuse of discretion. This policy is peculiarly applicable in the context of allegations of discovery abuse.

(Citation omitted.) *Gropper v. STO Corp.*, 276 Ga. App. 272, 275 (1) (623 SE2d 175) (2005). "Historically, it has been the policy of the Georgia appellate courts to refuse to interfere with a trial court's exercise of its discretion in absence of abuse." (Citation and punctuation omitted.) *Loftin v. Gulf Contracting Co.*, 224 Ga. App. 210, 215 (3) (480 SE2d 604) (1997). And a trial court has discretion concerning whether to allow a party to call a witness not named in a pretrial order at trial. *Nease v. Buelvas*, 198 Ga. App. 302, 303 (401 SE2d 320) (1991).

The trial court here warned both sides that they should be prepared to "adequately and fully discuss the case" at the scheduling conference, and that "[f]ailure to comply with this Order may result in the imposition of sanctions, including the striking of pleadings or the assessment of attorney's fees." When the Collinses affirmed that no experts remained unidentified, and then filed Dr. Shang's affidavit without leave after the ordered close of discovery, they violated the trial court's explicit and unambiguous commands. It follows that the trial court did not err when it refused to admit Dr. Shang's affidavit. See *Nease*, 198 Ga. App. at 302 (trial court did not abuse its discretion in refusing to amend pretrial order to add plaintiff's medical expert as witness).

The Collinses seek to forestall this result by citing our recent decision in *Hart v. Northside Hosp.*, 291 Ga. App. 208 (661 SE2d 576) (2008). There, we held that a trial court abused its discretion when it granted a motion in limine to exclude the plaintiff's expert medical affidavit in light of a discovery violation. Id. at 209-210 (1). Our rationale was that even though the *Hart* plaintiff had "no excuse" for failing to meet an extended discovery deadline, "such failures may not be remedied by the exclusion of probative trial evidence." Id. at 209 (1), citing *Hunter v. Nissan Motor Co. &c.*, 229 Ga. App. 729, 730 (1) (494 SE2d 751) (1997); but see *Brown v. Hove*, 268 Ga. App. 732, 735 (2) (603 SE2d 63) (2004) (noting conflict between

*Hunter* and other authority upholding exclusion of expert testimony as sanction for discovery violation). Our opinion in *Hart* included a caveat, however:

> We emphasize that this is not a case where a party violated a court order explicitly directing the party to identify an expert witness for trial, nor did the order at issue warn parties of potential sanctions for failure to meet deadlines, such as the exclusion of evidence or the dismissal of the action. Accordingly, we limit our holding to the specific issue before us, and we do not purport to limit a trial court's authority to issue such orders.

*Hart*, at 210, n. 9.

The affidavit sought to be introduced in this case after the close of discovery was from an entirely new expert, Dr. Shang, and was designed to cure the defects already raised by the defendants concerning Dr. Ernst's affidavit. There was no such surprise in *Hart*, where the plaintiffs eventually filed a medical expert affidavit by the same nurse whose affidavit had been attached to the complaint. Id. at 208, 210 (2). Because the plain terms of the trial court's orders barred the Collinses from introducing any additional testimony by a nontreating physician, the trial court did not err when it granted the defendants' motions to exclude Dr. Shang's affidavit. See *Gropper* (plaintiffs' wilful failure to comply with trial court's "specific and emphatic" discovery orders, including a failure to move for an extension of time to respond despite "explicit instructions" to do so, justified dismissal of the complaint).

2. The Collinses also argue that the trial court erred when it found that Dr. Ernst's affidavit failed to meet the requirements of OCGA § 24-9-67.1 and when it granted summary judgment to Dr. Kress, Resurgens, and Dr. Dickman on this basis. We disagree.

OCGA § 24-9-67.1 provides in relevant part:

> . . .
>
> (c) . . . [I]n professional malpractice actions, the opinions of an expert, who is otherwise qualified as to the acceptable standard of conduct of the professional whose conduct is at issue, *shall be admissible only if*, at the time the act or omission is alleged to have occurred, such expert:
>
> (1) Was licensed by an appropriate regulatory agency to practice his or her profession in the state in which such expert was practicing or teaching in the profession at such time; and

(2) In the case of a medical malpractice action, had *actual professional knowledge and experience in the area of practice or specialty in which the opinion is to be given* as the result of having been regularly engaged in:

(A) The *active practice of such area of specialty of his or her profession for at least three of the last five years*, with sufficient frequency to establish an appropriate level of knowledge, *as determined by the judge*, in performing the procedure, diagnosing the condition, or rendering the treatment which is alleged to have been performed or rendered negligently by the defendant whose conduct is at issue; or

(B) The *teaching of his or her profession for at least three of the last five years as an employed member of the faculty* of an educational institution accredited in the teaching of such profession, *with sufficient frequency to establish an appropriate level of knowledge, as determined by the judge*, in teaching others how to perform the procedure, diagnose the condition, or render the treatment which is alleged to have been performed or rendered negligently by the defendant whose conduct is at issue; and

(C) . . . Is a member of the same profession [as the party concerning whose conduct the testimony is offered].

(Emphasis supplied.) We review a trial court's determination that an expert does or does not meet the requirements laid out in OCGA § 24-9-67.1 (c) only for an abuse of discretion. *Nathans v. Diamond*, 282 Ga. 804, 806 (1), n. 8 (654 SE2d 121) (2007), citing *MCG Health v. Barton*, 285 Ga. App. 577, 581 (647 SE2d 81) (2007).

The record shows that Dr. Ernst, an anesthesiologist, had not had direct patient contact or responsibility in a hospital setting since 1993 and had not administered anesthesia since 1989. Although he claimed to have been a consulting physician at the University of Cincinnati from 1990 to 1996, Dr. Ernst was never employed by that university, never signed an employment or practicing agreement with anyone there, and did not write orders for patients or bill insurance companies for his work there. His role as consultant to an orthopedist at one New York hospital was limited to meeting the orthopedist in the hospital lounge to discuss cases and working with him to develop a computer program reviewing insurance claims. Likewise, Dr. Ernst's work for a health care provider between 1996 and 1998 was limited to determining whether its insureds would be approved for medical treatments. Finally, though Dr. Ernst's resume named him as "Deputy Chief Surgeon" for the New York State and

Amtrak police from 1997 or 1998 to the present, a role concerning which he sometimes refused to testify because it might have constituted a "breach of national security," Dr. Ernst was never a surgeon. His duties in these positions involved speaking with police officers having pain problems and referring them to pain management clinics, including one run by his brothers in Florida.

Under these circumstances, the trial court did not abuse its discretion when it concluded that Dr. Ernst had not been engaged in the active practice or teaching of anesthesiology for three of the last five years before Collins's surgery in August 2000 and thus did not satisfy the requirements of OCGA § 24-9-67.1 (c). *Nathans*, 282 Ga. at 807 (1) (trial court did not abuse its discretion excluding testimony of expert who did not have "actual professional knowledge or experience" in specialty of doctor whose performance the expert was critiquing). It follows that the trial court did not err when it granted summary judgment to Dr. Kress, Resurgens, and Dr. Dickman. *Cogland v. Hosp. Auth. of the City of Bainbridge*, 290 Ga. App. 73, 77 (2) (b) (658 SE2d 769) (2008) (trial court did not err in dismissing medical malpractice complaint when plaintiff's expert affidavit "contain[ed] nothing concerning [the doctor's] recent or continuing experience" in the specialty concerning which he was testifying).

3. Finally, the Collinses argue that the trial court erred when it granted summary judgment to Northside. Again, we disagree.

The Collinses attached the affidavit of Charles Smith, R.N. to their renewed complaint. In his affidavit, Smith averred that the Northside nurses had breached the applicable standard of care when they failed to follow physicians' orders, to monitor Collins in the post-anesthesia care unit, to administer ordered drugs, and to notify physicians when low blood pressure and low pulse developed, all of which contributed, "within a reasonable degree of medical probability," to "a poor outcome" for Collins. At his deposition, however, Smith testified that he could not say that these breaches of the standard of care proximately caused Collins's poor outcome. The trial court granted summary judgment to Northside because Smith's deposition testimony contradicted his affidavit and because he was not "competent to provide medical causation testimony."

Even assuming that the rule of *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986), excluding self-contradictory testimony does not apply to the testimony of a non-party expert witness (see *Whitley v. Piedmont Hosp.*, 284 Ga. App. 649, 654 (1) (644 SE2d 514) (2007), citing *Thompson v. Ezor*, 272 Ga. 849 (536 SE2d 749) (2000)), the trial court did not abuse its discretion when it held that Smith was not sufficiently qualified as an expert under OCGA § 24-9-67.1 (c) (2). See *Allen v. Family Med.*

*Center*, 287 Ga. App. 522, 525-526 (2) (652 SE2d 173) (2007) (expert nurse testifying in nurse malpractice case must show that she has been active or teaching in the relevant specialty for three of the last five years).

Smith's resume showed that he assumed his current administrative position in 2000, and he testified at his deposition that he had not engaged in actual clinical patient care for "many years." Smith also testified that his part-time teaching was limited to 12 hours a week. This was evidence to support the trial court's discretionary determination that Smith was not sufficiently qualified as a medical expert. See *Cogland*, 290 Ga. App. at 77 (2) (b) (affirming dismissal of plaintiffs' complaint under OCGA § 24-9-67.1 when expert affidavit did not show active practice in specialty for three of the last five years).

*Judgment affirmed. Ruffin, P. J., and Bernes, J., concur.*

DECIDED DECEMBER 31, 2008 —
RECONSIDERATION DENIED JANUARY 21, 2009 — 

*Reynolds & McArthur, W. Carl Reynolds, Bradley J. Survant, Michael G. Horner*, for appellants.

*Peters & Monyak, Robert P. Monyak, Bonnie M. Lassiter, Hall, Booth, Smith & Slover, Rush S. Smith, Jr., Heather L. Saum, Carlock, Copeland & Stair, Trisha L. Lewis, Susan V. Sommers, Patricia M. Anagnostakis*, for appellees.