A10A0066. VAUGHAN v. WELLSTAR HEALTH SYSTEM, INC.
(696 SE2d 506)

MIKELL, Judge.

Seventy-one-year-old William M. Vaughan was admitted to Kennestone Hospital in 2002 for weakness and ataxia[1] and died several weeks later after hitting his head on the bathroom door of his hospital room. His surviving spouse and the administrator of his estate, Nancy R. Vaughan ("Vaughan"), filed this medical malpractice action against WellStar Health System, Inc. d/b/a WellStar Kennestone Hospital ("WellStar"). The trial court granted summary judgment in favor of WellStar, and Vaughan appeals, contending that the trial court erred in excluding Vaughan's expert's affidavit; in denying her motion to modify the scheduling order; and in granting WellStar's motion to exclude Vaughan's new expert's affidavit. We affirm.

> To prevail at summary judgment . . . , the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's

---

[1] "Ataxia" means without coordination or having an unsteady gait and is often used to describe a symptom of incoordination which can be associated with infections, injuries, other diseases, or degenerative changes in the central nervous system. See http://ataxia.org/learn/ataxia-diagnosis.aspx#what-is-ataxia.

claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial. . . . If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.[2]

We review de novo a trial court's grant of summary judgment, construing the evidence most favorably to the nonmovant.[3] So viewed, the evidence shows that on July 6, 2002, Mr. Vaughan was admitted to Kennestone Hospital with a diagnosis of weakness and ataxia. According to the record, hospital staff gave Mr. Vaughan a fall prevention score of 30, as of July 26, 2002. Lillian Holloway, the nurse assigned to care for Mr. Vaughan, testified that he was a low risk for falls but that an "out of bed with assistance" order had been in place when Mr. Vaughan initially was admitted to the hospital. That order was not in place at 12:30 a.m. on July 28, 2002, when Holloway noticed a small hematoma on the left side of Mr. Vaughan's head. Mr. Vaughan told Holloway that he had gotten up to go the bathroom and fell into the door frame. Holloway testified that after discovering the hematoma, she performed a neurological assessment and found Mr. Vaughan's condition unchanged. About an hour later, Mr. Vaughan called the nurse's station, complaining of a headache. Holloway responded to his room five minutes later and found him unresponsive. Mr. Vaughan was taken to the intensive care unit and underwent a craniotomy. His condition deteriorated, and he died on August 3, 2002, without regaining consciousness.

On April 23, 2004, Vaughan sued WellStar on behalf of her husband's estate. Pursuant to OCGA § 9-11-9.1, Vaughan submitted the affidavit of Charles Horton, R.N., along with her complaint. Horton's deposition was taken on March 3, 2006, and on July 12, 2007, Vaughan notified the trial court that Horton would be unavailable to testify at trial. On September 5, 2007, the trial court entered a scheduling order, ordering that all experts be identified by September 14, 2007, and that all expert depositions be completed by October 16, 2007. On September 12, 2007, Vaughan identified a new expert, Mitzi Weekley, R.N., B.S.N. Weekley was deposed on October 4, 2007.

On July 29, 2008, WellStar moved to exclude Weekley's testimony, contending that she failed to qualify as an expert because she had not been engaged in the active teaching or practice of nursing for three of the five years preceding the date of the alleged negligence, as required by OCGA § 24-9-67.1 (c). WellStar also filed a supplemen-

---

[2] (Citations omitted; emphasis in original.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[3] *Rooks v. Tenet Health System GB*, 292 Ga. App. 477 (664 SE2d 861) (2008).

tal motion for summary judgment. On February 6, 2009, Vaughan moved the trial court to modify the scheduling order to provide her with additional time to identify a third expert. Vaughan explained that the motion was necessary because of "unexpected problems with [Weekley's] qualifications"; that a new expert had been identified; and that the new expert affidavit would be filed in conjunction with Vaughan's brief in response to WellStar's supplemental motion for summary judgment.

Following a hearing on February 12, 2009, the trial court granted WellStar's motion to exclude Weekley's affidavit; struck the third expert affidavit; and denied Vaughan's motion to modify the scheduling order, finding that she had identified the third expert nearly seventeen months after the court's deadline for identification of experts and in an apparent attempt to cure defects in Weekley's affidavit. The court also granted WellStar's supplemental motion for summary judgment, ruling that there was no admissible evidence as to either causation or violation of the applicable standard of care. This appeal followed.

1. Vaughan first contends that the trial court abused its discretion when it excluded Weekley's affidavit on the ground that she was not qualified to render an expert opinion. We disagree.

The standard for determining an expert's competence to testify is governed by OCGA § 24-9-67.1, and the statute applies to affiants under OCGA § 9-11-9.1.[4] OCGA § 24-9-67.1 (c) (2) (A) provides that in medical malpractice actions, the expert must have

> actual professional knowledge and experience in the area of practice or specialty in which the opinion is to be given as the result of having been regularly engaged in . . . [t]he active practice of such area of specialty of his or her profession for at least three of the last five years, with sufficient frequency to establish an appropriate level of knowledge, as determined by the judge, in performing the procedure, diagnosing the condition, or rendering the treatment which is alleged to have been performed or rendered negligently by the defendant whose conduct is at issue.

We emphasize that OCGA § 24-9-67.1 "gives the trial judge the discretion to determine whether the purported expert is competent to testify."[5] This is a corollary to the rule that "[t]he issue of the admissibility or exclusion of expert testimony rests in the broad

---

[4] OCGA § 24-9-67.1 (e).

[5] (Punctuation omitted.) *Craigo v. Azizi*, 301 Ga. App. 181, 182 (1) (687 SE2d 198) (2009), citing *Spacht v. Troyer*, 288 Ga. App. 898, 901 (3) (655 SE2d 656) (2007) (whole court).

discretion of the court,"[6] whose ruling will not be disturbed on appeal absent an abuse of that discretion.

In the case at bar, the trial court did not abuse its discretion in concluding that Weekley did not qualify as an expert under OCGA § 24-9-67.1 because she had not practiced in the relevant area of nursing for three of the five years preceding July 2002. The expert's knowledge and experience must be "relevant to the acts or omissions that the plaintiff alleges constitute[d] malpractice and caused the plaintiff's injuries."[7] In this regard, the complaint alleges that the nursing staff failed to properly monitor Mr. Vaughan, resulting in his fall; namely, nurses failed to activate the alarm system on Mr. Vaughan's bed, which would have notified them if he had gotten out of bed; that they failed to raise all four rails on Mr. Vaughan's bed; and that Holloway administered an excessive dose of a sedative to Mr. Vaughan on the evening of July 27, even though he previously had responded well to a lower dose. In an affidavit filed in conjunction with Vaughan's response to WellStar's supplemental motion for summary judgment, Weekley averred that from 2000 to 2001, she provided bedside nursing care twenty-four hours a day, seven days a week, to her husband and mother, both of whom were seriously ill. Weekley further stated that she was employed (1) as a registered nurse with Macon Northside Hospital from July until December 1997; (2) as a contract agency nurse with ATC Healthcare Services ("ATC") from December 1997 through December 2001; and (3) as a staff nurse for Beaufort Memorial Hospital from January 2002 through August 2002.

Kathryn Ann Chandler, branch manager of ATC, disputed Weekley's averments. Chandler testified that Weekley last worked at ATC on December 10, 1998. According to Chandler, Weekley was a "per diem registered nurse"; she was paid by the hour and worked as needed when she chose. Chandler could not say how often Weekley worked and she explained that ATC per diem nurses are not on full-time staff at any hospital; such nurses are employed by ATC, but could work full-time at a hospital and work for ATC on their off days. There is no evidence that Weekley was working full-time at any hospital at the time she was employed by ATC.

At best, the evidence shows that in the five years preceding the alleged malpractice, Weekley worked as a full-time hospital nurse for only eleven months. Vaughan argues that the nursing care Weekley administered to her husband and mother should be counted toward

---

[6] (Footnote omitted.) *Cotten v. Phillips*, 280 Ga. App. 280, 283 (633 SE2d 655) (2006). Accord *Nathans v. Diamond*, 282 Ga. 804, 806 (1), n. 8 (654 SE2d 121) (2007); *MCG Health v. Barton*, 285 Ga. App. 577, 580 (1) (647 SE2d 81) (2007).

[7] (Footnote omitted.) *Nathans*, supra at 806 (1).

the requirement that she be "regularly engaged in" the "active practice" of the relevant area of nursing "for at least three of the last five years."[8] In this regard, however, Vaughan was required to proffer some evidence that Weekley dealt with bed alarms and side rails, administered medications, and supervised geriatric patients and/or patients with abnormal neurological symptoms. Vaughan submitted no evidence concerning the ages and illnesses of Weekley's husband and mother or her duties and responsibilities in caring for them. As we noted in *Spacht v. Troyer*,[9] "the trial court is the gatekeeper of expert testimony. OCGA § 24-9-67.1 . . . gives the trial judge the discretion to determine whether the purported expert is competent to testify."[10] Given the conflicting testimony about whether Weekley had actual professional knowledge and experience through the active practice or by teaching in the relevant area of nursing during at least three of the last five years preceding the incident giving rise to the alleged malpractice, the trial court did not abuse its broad discretion in finding that Weekley's experience was insufficient to satisfy the statute and in excluding her affidavit.[11]

2. Vaughan likens Weekley's credentials, and thus her competency, to those of the nurse found competent in *Houston v. Phoebe Putney Mem. Hosp.*[12] Vaughan's reliance on *Houston* is misplaced for a variety of reasons, not the least of which is the factual dissimilarities in the experience levels of the nurses.[13] Significantly, as we recently pointed out in *Craigo v. Azizi*,[14] "[i]n [*Houston*], the trial court granted the defendants' motion to dismiss without any hearing on the sufficiency of the affidavit. Thus, the procedural posture in *Houston* differed from that in the case at bar."[15] We reiterate our holding in *Craigo*:

The law in Georgia regarding affidavits in medical malprac-

---

[8] See OCGA § 24-9-67.1 (c) (2) (A).

[9] Supra.

[10] (Footnote omitted.) *Spacht*, supra at 901 (3).

[11] See *Nathans*, supra at 805-807 (1); *Collins v. Dickman*, 295 Ga. App. 601, 606 (2) (672 SE2d 433) (2008) (no abuse of discretion in finding doctor's experience insufficient to satisfy time requirement); *Dawson v. Leder*, 294 Ga. App. 717, 719-720 (1) (669 SE2d 720) (2008) (doctor failed to show that she taught and/or practiced in the area of post-surgical airway management "with sufficient frequency to establish an appropriate level of knowledge") (punctuation omitted); *Akers v. Elsey*, 294 Ga. App. 359, 361-362 (2) (670 SE2d 142) (2008) (same as *Collins*).

[12] 295 Ga. App. 674 (673 SE2d 54) (2009).

[13] See id. at 678-679 (1) (nurse tendered as expert had ongoing practical experience in patient triage and had instructed nursing students in patient care for nine years preceding the incident giving rise to the malpractice claim).

[14] Supra.

[15] (Footnotes omitted.) Id. at 183 (1).

tice cases is at this moment crystal clear. One set of rules applies when the expert's competency is challenged and a hearing *is* held; a different set of rules governs the trial court's evaluation of the affidavit when the expert's competency is challenged and *no* hearing is held. Similarly, the standard of appellate review differs depending on whether the trial court had a hearing on the issue of the expert's competency. It is irrelevant whether or not evidence was offered at the hearing. If there is a hearing on the expert's competence, the trial judge weighs the evidence in the plaintiff's witness's affidavit, or in the competing affidavits, and decides "whether the witness qualifies as an expert and whether the expert's testimony satisfies the requirements of subsections (a) and (b) of OCGA § 24-9-67.1. When such a hearing has taken place, the trial court's decision is reviewed on appeal for abuse of discretion.[16]

Here, as in *Craigo*, the trial court held a hearing on the issue of the expert's qualifications. Accordingly, the issue, which we resolved in Division 1, is whether the trial court abused its broad discretion in determining that Weekley was unqualified under OCGA § 24-9-67.1. *Houston*, which relied on a de novo standard of review, is wholly inapposite.[17]

3. Vaughan next contends that the trial court erred in refusing to modify its scheduling order and in striking the affidavit of nurse Ida Gaskill. We disagree.

Trial judges have broad discretion in controlling discovery, including imposition of sanctions, and appellate courts will not reverse a trial court's decision on such matters

---

[16] (Punctuation and footnotes omitted.) Id. See *Hope v. Kranc*, 304 Ga. App. 367, 370 (1) (a) (696 SE2d 128) (2010) (trial court's ruling on motion to dismiss that expert was unqualified reviewed for abuse of discretion).

[17] Here, as was the case in *Craigo*, "[t]he issue of whether 'notice pleading' rules still apply in the absence of a hearing as contemplated by OCGA § 24-9-67.1 (d) is not before us today, and we do not decide whether the line of cases applying 'notice pleading' rules has been overruled by implication by the detailed evidentiary requirements of OCGA § 24-9-67.1." (Footnote omitted) Id. at 184 (1). Such cases include *Houston*. See also *Piscitelli v. Hosp. Auth. of Valdosta &c.*, 302 Ga. App. 746 (691 SE2d 615) (2010). We note, however, that all of the authorities cited by *Houston* for the proposition that "notice pleading" rules still apply predate the passage of OCGA § 24-9-67.1, which was enacted by the General Assembly as part of the Tort Reform Act of 2005, Ga. L. 2005, p. 1, § 7. See *Houston*, supra at 677 (1), citing, inter alia, *Hewett v. Kalish*, 264 Ga. 183 (442 SE2d 233) (1994). Query whether, in light of the 2005 passage of OCGA § 24-9-67.1, our Supreme Court would still hold today, as it did in *Hewett*, supra at 186 (2), that an affiant's conclusion that he was competent to testify was sufficient to qualify him as an expert under OCGA § 9-11-9.1.

unless there has been a clear abuse of discretion. This policy is peculiarly applicable in the context of allegations of discovery abuse.[18]

An initial scheduling order was entered on December 14, 2006, ordering that discovery be extended and completed by March 2, 2007. On February 7, 2007, the trial court approved a consent order extending the discovery period through May 31, 2007. An amended scheduling order was entered by consent on September 5, 2007, providing that all experts be identified by September 14, 2007; that all identified experts be deposed by October 16, 2007; and that all motions for summary judgment be filed by September 7, 2007. As noted above, Vaughan moved to modify the scheduling order 17 months later. Given this lengthy delay and the fact that the lawsuit already had been pending for almost five and a half years when Vaughan sought to identify a *third* expert, we reject her claim that the trial court abused its discretion in declining to modify the scheduling order.

We also reject Vaughan's claim that the trial court erred in striking Gaskill's affidavit. Vaughan sought to introduce Gaskill's curative affidavit seventeen months after the close of discovery and seven months after WellStar filed its motion to exclude, raising defects in Weekley's affidavit.[19] In light of the clear terms of the trial court's order, Vaughan's consent thereto, and her lengthy delay in seeking to ascertain a qualified expert, the trial court did not err in striking Gaskill's affidavit.

4. Finally, Vaughan contends that the trial court erred in granting WellStar's motion for summary judgment because Weekley and Gaskill have established that WellStar's nurses failed to meet the standard of care. Given our holdings in Divisions 1-3 above, the trial court properly granted summary judgment to WellStar.[20]

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED JUNE 25, 2010.

*Reynolds, Horne & Survant, W. Carl Reynolds, Bradley J.*

---

[18] (Citation omitted.) *Collins*, supra at 603 (1).

[19] We note that Vaughan has acknowledged problems with Weekley's qualifications and admits to such in her brief, where she explains that following Chandler's deposition, Vaughan "deemed it prudent to find another expert, and filed the affidavit of Nurse [Ida] Gaskill."

[20] See *Bregman-Rodoski v. Rozas*, 273 Ga. App. 835, 836-837 (616 SE2d 171) (2005) (absent expert testimony that defendant deviated from the requisite standard of care, trial court properly granted summary judgment in favor of defendant). See also *Collins*, supra at 606-607 (3); *Bowling v. Foster*, 254 Ga. App. 374, 377 (1) (a) (562 SE2d 776) (2002) (absent testimony from doctor or expert that defendant deviated from the standard of care, evidence insufficient to support a claim for medical malpractice).

YALE LAW LIBRARY

Survant, Michael G. Horner, for appellant.
Green & Sapp, David A. Sapp, Donald A. Gillis, for appellee.