**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 9, 2020**

# In the Court of Appeals of Georgia

A19A2430. DIETZEN v. RADIOLOGY ASSOCIATES OF DO-086
    ATLANTA, P.C. et al.

DOYLE, Presiding Judge.

Joyce Dietzen filed a medical malpractice action against Dr. David Caldwell
and Radiology Associates of Atlanta, P. C. ("RAA"), following a uterine fibroid
embolization procedure performed by Dr. Caldwell, alleging that he violated the
standard of care by failing to provide her post-procedure care and that RAA was
vicariously liable for Dr. Caldwell's negligence. The defendants moved for summary
judgment, and the trial court granted the motion. Dietzen appeals the judgment, and
we affirm for the reasons that follow.

To prevail at summary judgment under OCGA § 9-11-56, the
moving party must demonstrate that there is no genuine issue of material
fact and that the undisputed facts, viewed in the light most favorable to

the nonmoving party, warrant judgment as a matter of law. On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[1]

So viewed, the record shows that on July 30, 2015, Dr. Caldwell performed a uterine fibroid embolization on Dietzen. There were no complications during the procedure, but in the days immediately thereafter, she experienced bloating, flu-like symptoms, and worsening pain, and she called RAA many times to report the pain and cramping. Dr. Caldwell was on vacation for eight days following Dietzen's surgery, but she spoke with other RAA employees, including other physicians. Dietzen also saw doctors in her gynecologist's office on August 5, 2015, and September 9, 2015. On September 17, 2015, after Dietzen reported a fever and discharge, Dr. Citron — another RAA physician — ordered an MRI for Dietzen. On September 18, 2015, after reviewing the MRI results, Dr. Citron personally accompanied Dietzen to her gynecologist's office, which was in the same building.

---

[1] (Citation and punctuation omitted.) *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

Dietzen had a hysterectomy on October 9, 2015, which revealed that her uterus had ruptured.

In July 2017, Dietzen filed a complaint for medical negligence without an expert affidavit, alleging that Dr. Caldwell was negligent and that RAA was vicariously liable for his negligence. In September 2017, Dietzen filed an amended complaint with the accompanying expert affidavit of Dr. David Smoger pursuant to OCGA § 9-11-9.1 (b). The defendants moved for summary judgment, and the trial court granted the motion, concluding that Dr. Smoger, who offered the sole expert testimony to support Dietzen's claim, "testified that there was no standard of care violation attributable to Dr. Caldwell." This appeal followed.

1. *Dr. Caldwell.* Dietzen contends that the trial court erred by granting summary judgment to Dr. Caldwell. We disagree.

In his expert affidavit attached to the amended complaint, Dr. Smoger averred as follows:

> On July 30, 2015[,] Dr. Caldwell performed the [emobolization procedure] on Ms. Dietzen as planned. . . . Following the . . . procedure, Ms. Dietzen began to experience flu-like symptoms and vaginal discharge. She endured these symptoms for two to three weeks. Ms. Dietzen continuously attempted to contact Dr. Caldwell following the [procedure,] regarding these symptoms but initially received no

response. When Ms. Dietzen did get in touch with Dr. Caldwell's office regarding these symptoms[,] she was told that they did not provide follow-up care[,] and Ms. Dietzen was referred to her OB/GYN for follow-up. . . .

The applicable standard of care requires that the interventional radiologist should provide clinical follow-up care of a patient. . . . In my opinion, *the failure to provide after-care following the [emobolization] procedure on July 30, 2015[,] violated the standard of care* and did not exercise that degree of skill and care ordinarily employed generally, under similar conditions and like surrounding circumstances, in the care in treatment of Ms. Dietzen, and therefore deviated from the applicable standard of care. *Specifically, the failure to provide after-care led to the infection and rupture of Ms. Dietzen's uterus requiring the hysterectomy performed on October 9, 2015.*[2]

In his subsequent deposition, Dr. Smoger was questioned about his opinion regarding Dr. Caldwell's violation of the standard of care, and he conceded that Dr. Caldwell did not violate the standard of care during the procedure. Dr. Smoger also repeatedly admitted that he could not identify any standard of care violation by Dr. Caldwell during the eight days he was on vacation following Dietzen's procedure.

---

[2] (Emphasis added.)

4

According to Dr. Smoger's deposition testimony, the sole standard of care violation in this case occurred when an RAA physician *other than Dr. Caldwell* referred Dietzen to gynecology for post-operative care.

Dr. Smoger's affidavit and deposition testimony is the sole evidence offered by Dietzen to support her claim against Dr. Caldwell. In his deposition, Dr. Smoger failed to establish any violation of the standard of care by Dr. Caldwell. And Dr. Smoger's affidavit similarly does not allege that Dr. Caldwell's personal failure, as distinguished from that of RAA, to provide aftercare to Dietzen violated the standard of care.[3] Accordingly, the trial court did not err by granting summary judgment to Dr. Caldwell.[4]

---

[3] And Dr. Smoger does not allege that Dr. Caldwell violated the standard of care by failing to properly arrange for aftercare for Dietzen during his absence.

[4] See *Vaughan v. WellStar Health Sys.*, 304 Ga. App. 596, 602 (4) (696 SE2d 506) (2010) (affirming the grant of summary judgment to defendant hospital because the plaintiff failed to establish that the nurses violated the standard of care); *Collins v. Dickman*, 295 Ga. App. 601, 606-607 (4) (672 SE2d 433) (2008); *Bregman-Rodoski v. Rozas*, 273 Ga. App. 835, 836-837 (616 SE2d 171) (2005) (affirming the grant of summary judgment to the defendant based on the lack of expert testimony that the defendant deviated from the requisite standard of care); *Bowling v. Foster*, 254 Ga. App. 374, 377 (1) (a) (562 SE2d 776) (2002) (affirming the grant of summary judgment to the defendant because the plaintiff failed to produce testimony from any doctor or expert that the defendant deviated from the standard of care).

2. *RAA*. Dietzen also argues that the trial court erred by granting summary judgment to RAA. This enumeration is without merit.

Dietzen's claims against RAA are based solely upon its vicarious liability for Dr. Caldwell's purported negligence.[5] Because Dietzen's claims against Dr. Caldwell fail, so does her vicarious liability claim against RAA.[6] Accordingly, the trial court properly granted summary judgment to RAA.

*Judgment affirmed. Coomer and Markle, JJ., concur.*

---

[5] Following the hearing, Dietzen moved to amend her complaint out of time, seeking to add a claim "as justice requires" that "[t]he negligence of RAA is imputed to Dr. Caldwell as [his] agent . . . under the doctrine of respondeat superior[,] and RAA is negligent on its own behalf in failing to provide proper aftercare to [Dietzen]. . . ." The appellate record does not contain a ruling on the motion to amend, and Dietzen does not challenge on appeal any ruling or failure to rule on the motion to amend.

[6] See *Cechman v. Travis*, 202 Ga. App. 255, 260 (4) (414 SE2d 282) (1991) ("'[If] the liability of a party is premised solely upon his vicarious liability for the tortious actions of an agent and judgment is entered for the agent, the party alleged to be vicariously liable is also entitled to judgment.'"), quoting *Kornegay v. Mundy*, 190 Ga. App. 433, 435 (2) (379 SE2d 14) (1989).