**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/

**November 29, 2012**

# In the Court of Appeals of Georgia

A12A1637. THE KROGER CO. v. WALTERS et al.

BRANCH, Judge.

Craig and Lisa Walters brought this slip-and-fall action against The Kroger Company. During discovery, the trial court struck Kroger's answer on the ground that Kroger had spoliated evidence and acted in bad faith, thereby precluding Kroger from introducing evidence at trial to contest its negligence. The case went to trial on causation, damages, and attorney fees. Walters, age 48 at the time of the fall, was able to show the fall caused a severe spine injury that required surgery and resulted in a lifelong disability. A jury awarded $1,689,456 in damages and $675,782.40 in attorney fees. Kroger appeals and claims six errors, primarily related to the issues of spoliation, litigation expenses, and damages. We affirm the ruling on spoliation but

reverse the judgment because the trial court erroneously excluded material evidence at trial.

1. Kroger first challenges the court's pretrial decision to strike Kroger's answer on the ground of spoliation. "[S]poliation refers to the destruction or failure to preserve evidence that is necessary to contemplated or pending litigation." (Citation and punctuation omitted.) *Silman v. Assocs. Bellemeade*, 286 Ga. 27, 28 (685 SE2d 277) (2009)."Where a party has destroyed or significantly altered evidence that is material to the litigation, the trial court has wide discretion to fashion sanctions on a case-by-case basis." (Citation omitted.) *AMLI Residential Properties v. Ga. Power Co.*, 293 Ga. App. 358, 361 (1) (667 SE2d 150) (2008). A trial court's decision imposing sanctions for spoliation is reviewed for abuse of discretion. *Wal-Mart Stores v. Lee*, 290 Ga. App. 541, 546 (1) (659 SE2d 905) (2008).

The court's decision on spoliation was based on the discovery evidence. Construed in favor of the trial court's decision, that evidence shows that on May 25, 2008, Walters slipped and fell on a piece of banana in the meat department of a Kroger store and landed on his left hip and left elbow. Initially, Walters did not experience pain or other symptoms. Peyton Kelley, the store co-manager, came to the scene, saw the alleged cause of the fall, which he described as "mushy" and smelling

2

like banana, and spoke with Walters and a customer who witnessed the fall. Kelley asked Walters if he was okay, and Walters replied that he appeared to be fine. But Kelley also remembered that Walters said he was a little sore, and Kelley noticed that Walters was limping. Kelley told Walters to let him know if he had any problems so that he could take care of it. Walters gave Kelley his name and resumed shopping; he did not threaten a lawsuit. But when he got in his car to go home, Walters began to experience unusual symptoms, including tingling in his toes, numbness in his legs, and, eventually, loss of balance, which grew worse over time.

Following Kroger's stated procedure to investigate every such incident, Kelley began to investigate Walters' fall that same day. He spoke to store employees, including the employee nearest to the fall. And he downloaded from a company website a six-page "Customer Incident Report & Investigation Check List," which he completed, partially that day and partially thereafter, based on his notes from the day of the incident, including a diagram of where Walters fell. That diagram is marked as having been drawn on May 25, and every page of the customer incident report, including the diagram, states that it was made "in anticipation of litigation under the direction of legal counsel." The report has instructions to mail it to "Sedgwick CMS, Kroger Liability Unit."

3

Kelley admitted, however, that in several regards, he did not follow store policy regarding his investigation. Kelley reviewed video from the security cameras located in the vicinity of the fall, including camera 17, the camera closest to that area. The cameras' hard drives retain their video for 17 days but are then erased and reused; to retain a video for a longer time, one must transfer the file to a CD or DVD. Store policy dictated that if the video covered the area of the fall, it should be retained. After viewing the video captured at the time of the fall, Kelley decided not to save any video despite the company policy. He testified that none of the cameras captured the incident. He also testified, however, that he could not recall reviewing the video images that day, that he did not know why he did not make a copy, and that he could not be sure the system was actually working at the time. Kelley admitted that, in addition to the fall itself, the videos might have shown when the store aisles were inspected, how and when banana came to be on the floor in the meat department, and whether any store employees were in the vicinity of the fall.[1] Kelley also testified that if he had looked at the video, he should have recorded his findings in the incident

[1] Kroger, in fact, would later seek summary judgment on the grounds that no employee had knowledge of the banana, no employee was in the immediate vicinity of the fall, no evidence showed how long the banana had been on the floor, and regular inspections had occurred.

4

report, yet the report does not reference any video. Finally, Kelley had a still camera at the store, and he testified that he should have taken photographs of the scene but did not do so.

Walters spoke to Kelley again at the store within two weeks of the fall and told him that he had an appointment with a doctor. Walters also saw Kelley from time to time thereafter when he went shopping. Walters first saw an orthopedist on July 3, 2008. On July 9, 2008, more than 17 days after the fall, Walters again spoke to Kelley and reported having problems with his back and legs beginning a month after the fall; he also stated that he needed help with his medical bills. During that conversation, Kelley obtained a telephone number and address for Walters and said he was going to submit the claim to Sedgwick. In August, Kelley faxed the Customer Incident Report to the company risk management office and to Sedgwick; the report has a handwritten "Claim #" filed in.

Walter and his wife filed suit on March 6, 2009 , less than a year after the fall. At his deposition on November 30, 2009, Kelley testified that camera 17 – the camera closest to the scene of the fall – had not been moved or re-aimed since the day of the fall. Subsequently, Kroger produced exemplar video (taken from each camera on January 7, 2010 ), showing each camera's field of view, and camera 17 did not point

directly at the place where Walters fell. On August 3, 2010, Walters' counsel took the deposition of store manager Harry Turner in his office at the store. Turner testified that none of the indoor cameras had been re-aimed, including camera 17, since he began managing the store in 2004 and that the cameras could not be moved electronically; rather, a person would have to climb a ladder to adjust them. But Walters' counsel then asked to view a live feed from camera 17, and Kroger's attorney objected. Following a discussion among the lawyers, the live feed was shown, and it was discovered that the camera was not pointed in the same direction as the exemplar and that, instead, the camera pointed directly at the location of Walters's fall. Thereafter, Turner testified that he could not say which way the camera was pointed at the time of the fall.

Walters filed a motion for sanctions, and the court held a hearing on November 12, 2010. On December 14, 2010, the court entered an order finding that Kroger had destroyed the video from the date and time of the incident by not preserving it; that the video might have established either actual or constructive knowledge by Kroger of a foreign substance on the floor; that the Customer Incident report states that it was made in anticipation of litigation; that the exemplar video showed the general area but not the exact location of the fall; that the subsequent deposition revealed that the

6

camera was "centered on the exact location of Walters' fall and not the location shown in the prior images produced by Kroger and could have clearly shown the exact conditions at the time of Walters' fall and whether Kroger employees knew or should have known of the dangerous condition in that area." The court concluded that Kroger had spoliated the video evidence, which could have been maintained at minimal expense; that the spoliation prejudiced Walters; and that Kroger "acted in bad faith in failing to preserve the evidence and manipulating evidence to excuse its actions." At the same time, and based on its ruling on spoliation, the trial court denied Kroger's motion for summary judgment on the merits. [2]

(a) The evidence outlined above shows that the court's factual findings are supported by some evidence in the record.

(b) Kroger argues, however, that the court's order cannot be sustained because the facts fail to show it had notice at the time the video was erased that Walters was contemplating litigation, as is required in spoliation cases. See *Baxley v. Hakiel Indus.*, 282 Ga. 312, 313 (647 SE2d 29) (2007); *Kitchens v. Brusman*, 303 Ga. App. 703, 707 (1) (a) (694 SE2d 667) (2010). As a part of its argument, Kroger asserts that Kelley

---

[2] The trial court granted a certificate of immediate review, and this Court granted Kroger's application for interlocutory appeal. Nevertheless, on October 3, 2011, this Court dismissed the interlocutory appeal as improvidently granted.

7

had no contact with Walters during the 17-day period in which he could have saved the video in question. But Walters deposed that he returned to the store "a week and a half, two weeks" after his fall and told Kelley about his upcoming doctor's appointment. Further, beginning on the day of the fall, Kelley began to prepare a report which states that it was made in anticipation of litigation. And some evidence supports the trial court's conclusion that during discovery Kroger submitted a false exemplar from camera 17, from which an inference could arise that Kroger knew the original video should not have been deleted.

The facts taken as a whole are sufficient to support the trial court's findings. In *Baxley*, a dram-shop liability case, the Supreme Court reversed the trial court and this Court and found that evidence similar to that presented here was sufficient to raise an issue of spoliation, including an issue of whether litigation was contemplated, and that, therefore, the case should go to trial. Baxley, 282 Ga. at 313-314. As the Supreme Court explained,

> There was proof of spoliation here, as [the defendant's] manager was aware of her customer's involvement in the accident at issue and took steps to investigate the day after it occurred, yet failed to preserve the recording of the pertinent events and allowed any potential videotaped evidence to be destroyed. Although the manager stated that she did not see a need to save the recording because there was no camera covering

the area where [the customer] was sitting, a meaningful link between [the plaintiff's] claims against [the defendant] and the spoliation existed, as the recording could have contained evidence relevant to the critical issue of whether [the customer] would soon be driving, e.g., an image of her walking through [the restaurant] with keys in hand or leaving with another person.

Id. The high court concluded, "Thus, because [defendant's] manager was aware of the potential for litigation and failed to preserve whatever videotaped evidence may have been captured as to whether [the customer] would soon be driving, a rebuttable presumption arose against [the defendants]." (Citation omitted.) Id. at 314.[3]

Kroger's reliance on *Paggett v. Kroger Co.*, 311 Ga. App. 690 (716 SE2d 792) (2011), is misplaced, in large part because in that case the trial court found that there was *no spoliation*, and our decision on appeal was merely a finding that the trial court did not abuse its discretion. Id. at 693 (2). Here, the trial court found spoliation. Second, in *Paggett*, there is no evidence the plaintiff returned to the scene before the video was erased to explain that he had an appointment with a doctor nor evidence that the store later manipulated the aim of the relevant video camera; and there was

---

[3] That court later clarified that *Baxley* did not expand the spoliation doctrine with this wording: "the phrase 'potential for litigation from *Baxley* refers to litigation that is actually 'contemplated or pending,' and nothing more." *Silman*, 286 Ga. at 28.

evidence that the manager did not review the video, that the manager would not knowingly discard information relevant to a potential lawsuit, and that the plaintiff only slipped in rainwater. Compare also *Craig v. Bailey Bros. Realty*, 304 Ga. App. 794, 797 (1) (697 SE2d 888) (2010) (no evidence that plaintiff's father gave the owners notice that he was contemplating litigation).

In sum, we find no abuse of discretion in the trial court's finding of spoliation.[4]

(c) Our holding on spoliation also resolves Kroger's assertion that the trial court erred by relying on the spoliation decision when denying Kroger's motion for summary judgment. See *Baxley*, 282 Ga. at 313 (proof of spoliation creates presumption that evidence would have been harmful, rendering summary judgment inappropriate).

2. Prior to trial, Kroger moved in limine to exclude all evidence of (1) spoliation, i.e., deletion of the video, and (2) manipulation of evidence, i.e., re-aiming the camera, on the ground that they were not relevant given that the court had struck its answer, thereby establishing Kroger's negligence as a matter of law. Kroger further argued that the evidence was more prejudicial than probative. Walters also moved in

---

[4] Kroger does not challenge as an abuse of discretion the sanction imposed for spoliation.

limine: he sought to exclude the testimony of David Wigley, the meat department manager who had been with Kroger for 25 years, who allegedly re-aimed camera 17 in 2010, on the ground that Kroger withheld his identification as a witness until the eve of trial. The trial court decided to allow evidence of spoliation and manipulation but not to allow Wigley to testify. Kroger contends the trial court erred by denying its motion and by granting Walters' motion. We conclude the trial court correctly allowed evidence of spoliation but abused its discretion by excluding testimony from Wigley.

"We review a trial court's ruling on a motion in limine for abuse of discretion. A motion in limine is properly granted when there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial." (Punctuation and footnote omitted.) *Hankla v. Jackson*, 305 Ga.App. 391, 392 (1) (699 SE2d 610) (2010).

(a) In addition to compensation for his injury, Walters sought expenses of litigation and attorney fees under OCGA § 13-6-11 for stubborn litigiousness and unnecessary trouble and expense.[5] The evidence of spoliation was relevant to the claim for fees under OCGA § 13-6-11 and the issue of causation; it was, therefore, properly admitted.

---

[5] In his first amended complaint, Walters did not seek fees for bad faith under OCGA § 13-6-11, nor did he raise a claim for fees and expenses under OCGA § 9-15-14.

(i) Walters claimed that Kroger was stubbornly litigious and caused unnecessary trouble and expense, which requires showing that "there exists no bona fide controversy or dispute regarding liability for the underlying cause of action." (Citation omitted.) *David G. Brown, P.E. v. Kent*, 274 Ga. 849, 850 (561 SE2d 89) (2002).

At trial, Walters presented some evidence that raised a reasonable inference that, prior to suit being filed, Kroger deleted the video from camera 17 in violation of company policy and re-aimed the camera to cover its tracks. That video could have shown that Kroger failed to reasonably inspect the area of the fall or even that, prior to the fall, an employee was near the banana but failed to clean it up. Thus, the video could have established that Kroger was negligent and knew that it was negligent. Yet, Walters was forced to file suit in an attempt to establish Kroger's negligence. Moreover, Walters had to spend part of its litigation effort establishing Kroger's spoliation of evidence.

Thus, if the video would have shown that Kroger was negligent, then Walters was forced to file suit in a case where there was no bona fide controversy as to negligence. "Where [no bona fide controversy] exists, then forcing a plaintiff to resort to the courts in order to collect is plainly causing him 'unnecessary trouble and

12

expense.'" *Buffalo Cab Co. v. Williams*, 126 Ga. App. 522, 524 (191 SE2d 317) (1972). Such a "so sue me" attitude authorizes the imposition of fees:

> A defendant without a defense may still gamble on a person's unwillingness to go to the trouble and expense of a lawsuit; but there will be, as in any true gamble, a price to pay for losing.

Id. at 525. And the question of whether there was a bona fide controversy is for the jury "unless the facts preclude such a finding as a matter of law." *Webster v. Brown*, 213 Ga. App. 845, 846 (2) (446 SE2d 522) (1994).

Finally, without a dispute as to liability, "the raising at trial of a dispute as to the amount of liability, without more, will not satisfy the bona fide controversy requirement." *Delta Air Lines v. Isaacs*, 141 Ga. App. 209, 211-212 (3) (233 SE2d 212) (1977). See also *Daniel v. Smith*, 266 Ga. App. 637, 638-639 (1) (597 SE2d 637) (2004).

Accordingly, we find no abuse of discretion by the trial court in allowing evidence of the spoliation and manipulation of evidence to be presented to the jury.

(ii) Second, the evidence of spoliation and manipulation was also relevant to Walters' claim that Kroger caused his injuries. Spoliation can establish a "presumption that the evidence would have been harmful to the spoliator." (Citations

13

and punctuation omitted.) *Baxley*, 282 Ga. at 313. The video could have shown the manner in which and how hard Walters fell, how he appeared after the fall, and the degree to which he was limping or otherwise affected as he left the scene – all issues that are relevant to whether the fall caused his injuries. Thus, the jury was entitled to hear evidence of spoliation relevant to causation. See *Langlois v. Wolford*, 246 Ga. App. 209, 212 (2) (539 SE2d 565) (2000) (spoliation evidence relevant to issues of liability). And, as also shown in *Langley*, evidence of spoliation can be relevant to the credibility and impeachment of the spoliator. Id.

Finally, Kroger claims that the trial court erred by admitting the evidence that it manipulated the aim of the camera on the ground that any possible manipulation occurred during the litigation and was not related to the underlying tort. See *David G. Brown, P.E. v. Kent*, supra ("statutory recovery [under OCGA § 13-6-11] for stubborn litigiousness or causing unnecessary trouble and expense is authorized if there exists no bona fide controversy or dispute regarding liability for the underlying cause of action") (citation omitted). But the date that someone re-aimed the camera was an issue of fact for the jury. Moreover evidence of events occurring "after a cause of action in tort arises may be admissible to demonstrate that [the defendant] caused the plaintiff unnecessary trouble and expense." *Brown v. Baker*, 197 Ga. App. 466, 468

14

(3) (398 SE2d 797) (1990), citing *U-Haul Co. of Western Ga. v. Ford*, 171 Ga. App. 744, 754 (2) (320 SE2d 868) (1984) and *Buffalo Cab*, 126 Ga. App. at 524.

(b) We agree, however, that, given the trial court admitted evidence of spoliation and manipulation, it abused its discretion by granting Walters' motion to prohibit Kroger from calling Wigley as a witness, because his testimony, too, was relevant to spoliation and manipulation.

A week before trial, which was initially scheduled for November 2011, Kroger identified Wigley as a potential trial witness regarding the re-aiming of the camera. The trial was continued for other reasons, but during the interim, Wigley was deposed.[6] At the rescheduled trial set two months later, Walters argued that Wigley should be excluded because of the late notice, the "suspect circumstances of his involvement in this case at this late date," and "the fact that he was never identified when this issue [regarding spoliation and re-aiming the camera] was being litigated for months." Walters added, "I just don't think the circumstances of him coming

---

[6] During the deposition, Wigley stated that no one from Kroger had ever contacted him about the cameras until just prior to trial. Walters asserted that Kroger never amended its discovery or otherwise provided notice of Wigley as a witness until November 2011. Indeed, Kroger's counsel admitted he had not gone back through the discovery requests to see if Wigley's testimony would have been responsive to any of Walters' earlier discovery requests.

15

forward right on the eve of trial on a critical issue that's changed the course of this entire case should be allowed." Also, Kroger had offered a different explanation for the re-aiming of the camera during the hearing on spoliation – that contractors may have moved the cameras. The court granted Walters' motion in limine and stated, "I don't think it will be appropriate for the witness to testify now to explain away something that – if it was going to be explained away, it should have been done prior to the Court's ruling [on spoliation]." At trial, Kroger proffered that Wigley would testify that he re-aimed camera 17 in the spring or summer of 2010 in order to respond to shoplifting in that area of the store.

In a civil suit it is an abuse of discretion to exclude a relevant witness solely on the ground that the witness was not identified during discovery or in a timely manner. *Infinite Energy v. Cottrell*, 295 Ga. App. 306, 309 (3) (671 SE2d 294) (2008); *Hart v. Northside Hosp.*, 291 Ga. App. 208, 209-210 (1) (661 SE2d 576) (2008). Compare *Collins v. Dickman*, 295 Ga. App. 601, 603-604 (1) (672 SE2d 433) (2008) (exception for violation of an express court order). The proper remedy is to order a postponement to allow the party sufficient time to react or, if necessary, a mistrial. *White v. Lance H. Herndon*, Inc., 203 Ga. App. 580, 581 (5) (417 SE2d 383) (1992); *Hanna Creative Enterprises v. Alterman Foods*, 156 Ga. App. 376, 379 (2) (274 SE2d 761) (1980). In

16

this case, as a result of a continuance, Walters had time to depose Wigley prior to the rescheduled trial, so the element of surprise was eliminated.

Disallowing the evidence was harmful to Kroger. See *White*, 203 Ga. App. at 582 (5) (improper exclusion of evidence must be harmful as well as erroneous to warrant reversal). Wigley would have testified about re-aiming of the camera, which, as shown above, was relevant to issues being tried. Although Kroger's negligence had been established, the jury still had to decide causation, damages, and attorney fees. And the evidence of spoliation that was presented raised a presumption that the video tape would have been harmful to Kroger. Wigley's testimony suggests that re-aiming the camera occurred for an innocent reason, which could have helped to rebut the presumption that the missing video was harmful to Kroger.

3. Kroger contends the trial court erred by denying its motion for directed verdict on the issue of attorney fees and expenses of litigation. But the issue of fees under OCGA § 13-6-11 "is a question for the jury and an award will be upheld if any evidence is presented to support the award." (Citation and punctuation omitted.) *Professional Consulting Svcs. of Ga. v. Ibrahim*, 206 Ga.App. 663, 665 (3) (426 SE2d 376) (1992). As shown above, there was some evidence that Kroger caused Walters unnecessary trouble and expense. Thus, a directed verdict was not warranted.

17

4. Kroger contends the trial court erred by denying its motion for partial directed verdict on the issue of past and future lost earnings. Because causation and damages will be retried and the evidence on these issues might not be the same, we need not address this issue now. See generally *Godwin v. Godwin*, 265 Ga. 891, 892 (2) (463 SE2d 685) (1995).

In sum, we affirm the trial court's order on spoliation but reverse the judgment and remand for a new trial on causation, damages and the claim for fees under OCGA § 13-6-11.

*Judgment affirmed in part; reversed in part. Case remanded with direction. Miller, P. J., and Ray, J., concur.*