307 Ga. 815
FINAL COPY

S18G1549. LEE v. SMITH.

MELTON, Chief Justice.

In this personal injury case, the trial court excluded the testimony of an expert defense witness, reasoning that the expert had "not [been] properly identified within the parameters of the scheduling order." The Court of Appeals affirmed, and we granted the defendant's petition for a writ of certiorari to answer the following two questions: (1) May a trial court exclude an expert witness solely because the witness was identified after the deadline set in a scheduling, discovery, and/or case management order? and (2) If not, what factors should a trial court consider when exercising its discretion whether to exclude an expert witness who was identified after the deadline set in a scheduling, discovery, and/or case management order?

The parties concede, and this Court agrees, that the answer to the first question is "no." With respect to the second question, we

conclude that, when a trial court exercises its discretion in a civil case to determine whether to exclude a late-identified witness, it should consider: (1) the explanation for the failure to disclose the witness, (2) the importance of the testimony, (3) the prejudice to the opposing party if the witness is allowed to testify, and (4) whether a less harsh remedy than the exclusion of the witness would be sufficient to ameliorate the prejudice and vindicate the trial court's authority. Based on these answers, we reverse the judgment of the Court of Appeals in part and remand this case with direction that the Court of Appeals vacate the trial court's ruling and remand the case to the trial court for reconsideration.

1. The facts of this case are not in dispute. The record shows that the plaintiff, David A. Smith II, was a world-ranked collegiate high jumper who suffered several injuries, including a fractured left hip, in a September 2012 car collision. The defendant, Donggue Lee, acknowledged fault for the collision. Smith filed suit against Lee in September 2014; at that time Smith requested in his complaint damages for "pain and suffering," "medical expenses," and "further

2

relief as [the trial court] may deem just and proper," but he made no specific claim for future lost wages.

After answering the complaint, Lee served written discovery on Smith, asking him to identify any expert witnesses who would testify at trial and requesting an itemization of all special damages he was claiming as a result of the accident, including future lost earnings. On July 1, 2015, Smith responded in relevant part[1] to Lee's interrogatories on these matters as follows:

[Interrogatory Number] 16.

Identify each expert expected to testify at trial and state the subject matter about which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and give a summary of the grounds for each opinion.

RESPONSE: [Smith] has not made a decision regarding expert witnesses who may testify at trial, and, as such, this interrogatory will require supplementation at a later date in which supplementation will be pursuant to the requirements of the Georgia Civil Practice Act.

. . .

[1] Although Smith also asserted various objections in some of his specific discovery responses, those objections are not relevant to our analysis and are not included in the quoted portions of his responses in this opinion.

3

[Interrogatory Number] 21.

Itemize all special damages you claim as a result of the accident, including, but not limited to, property damage, medical expenses, drug expenses, and lost wages. A general reference to other documents will not serve as a response to this interrogatory; you may attach a chart summarizing these damages as an exhibit to your responses.

RESPONSE: [Smith] has not yet received all of the medical bills associated with the injuries he received in this collision. To date, [Smith] has received medical bills totaling $3,241.39 (Bay Area Credit Service $1,229.39; Avis Rent a Car System, LLC $901.80; West Georgia Health System Radiology $108.00; West Georgia Medical Center $1,005.20). [Smith] also received treatment of his pelvic fracture from Dr. James Andrews and rehabilitation and physical therapy at Auburn University. This interrogatory will require supplementation at a later date in which supplementation will be pursuant to the requirements of the Georgia Civil Practice Act.

. . .

[Interrogatory Number] 35.

If you are claiming lost earnings, please state: (a) each and every basis, fact and circumstance upon which you rely for each such claim; (b) if there has been any change in your occupation(s), employer(s), duties(s) [sic] or earnings since the accident, please describe each such change; and (c) if your alleged injuries have prevented you from working at any time since the accident referenced in

4

the complaint, state: (1) the date(s) that you were unable to work because of your injuries and what earnings, if any, you lost by reason of each such date of not working; and (2) whether you have received any payment (Workmen's Compensation, sick leave pay, disability insurance, income protection insurance or other) on account of any such loss of time from work or loss of earnings and the amount and source of such payment.

RESPONSE: [Smith] is not claiming lost earnings.

In Smith's responses to Lee's request for production of documents, Smith stated the following:

[Request for Production Number] 1.

If you are making a claim for loss of income or wages or loss or diminishment of future wages or earning capacity, provide a copy of your W-2, W-4 and 1099 forms and federal and state income tax returns, including supplemental tax forms for any business income, for the past five years. (If you do not have them, then produce an executed tax form 4506).

RESPONSE: [Smith] is not claiming past or current lost wages. However, [Smith] may present evidence at the time of trial on this issue of diminished future wages or earning capacity, and, as such, this response may require supplementation at a later date prior to trial in accordance with the Civil Practice Act.

. . .

[Request for Production Number] 4.

[Produce] [a]ll documents, if any, relating to your rate of pay, income, etc., and relating to lost earnings or other special damages which you claim in this lawsuit.

RESPONSE: [Smith] is not claiming lost current or past wages.

. . .

[Request for Production Number] 14.

If you are claiming a loss of income or a reduction in your ability in the future to labor, please (a) produce all books, documents or other tangible things which prove, support or constitute evidence of any fact or circumstances on which you base your claim of lost earnings; (b) please produce your Federal and State Income Tax returns, W-2, and 1099 forms for three years before the date of incident referenced in the Complaint and for each year since the incident; (c) please produce all check stubs, receipts and record of deposits, drafts and other documents reflecting earnings or salary for the period of one year prior to this accident.

RESPONSE: [Smith] is not claiming lost current or past wages. This response may require supplementation at a later date, which said supplementation will be in accordance with the Civil Practice Act.

Though Smith was able to return to competition and compete in the 2016 Olympics, he underwent surgery in January 2017 to remove a bone chip from his hip joint that, he alleges, was caused by

6

the 2012 collision. Two months after his surgery, Smith supplemented his response to Interrogatory Number 16 regarding the identification of expert witnesses, stating:

> [Smith] further intends to call various damages witnesses at trial regarding the impact that [Smith's] injuries will have upon [his] future in various aspects of his personal life and athletic career, including treating physicians and [Smith's] agent, Leo Finkley.[2] To the extent necessary, and in the event the parties cannot stipulate to an agreed upon rate for reduction of future lost earnings to present cash value, [Smith] intends to call to trial to testify for that limited purpose a qualified economist.

Less than a week later, on April 5, 2017, the trial court entered a consent scheduling order that required identification of all witnesses by May 12, 2017, and set August 7 as the trial date. On the last day for identifying witnesses, Smith again supplemented his discovery responses. Relevant here is his supplementation to Interrogatory 16, which stated:

> [Smith] further intends to call various damages witnesses at trial regarding the impact that [Smith's] injuries will have upon [his] future in various aspects of his personal life and athletic career, including . . . [Smith's] agent, Lamont Dagen.

---

[2] The record does not indicate that Lee ever deposed Finkley.

And, Smith supplemented his response to Interrogatory Number 35, which stated:

> In addition to past, current and future lost earnings, [Smith] has further suffered special and/or general damages in the form of, inter alia, diminished earning capacity, diminished ability to work, labor or earn wages. Since the date of the accident giving rise to this lawsuit, [Smith's] occupation changed upon graduation from Auburn University in May 2016 from collegiate high jumper to professional high jumper. As a result of the injuries suffered during the collision and the reasonable and necessary medical treatment resulting therefrom (including, inter alia, surgery in January 2017), [Smith] has lost earnings (including, inter alia, contract, sponsorship, incentive, appearance and various other forms of earnings associated with his profession) in an amount to be more fully shown at trial.

Lee did not supplement his answers to Interrogatory 21 or the Requests for Production. Lee deposed Smith's newly identified sports agent, Lamont Dagen, on June 20. A week later, Lee sent an e-mail to Smith identifying an expert he planned to call as a rebuttal witness regarding Smith's newly asserted claim for future lost earnings.

At a July pretrial hearing, Smith argued that Lee's rebuttal expert should be excluded from testifying at trial because he was not

named by the May 12 deadline set in the scheduling order. In response, Lee argued that he had not learned of Lamont Dagen or the subject of the sports agent's testimony until Smith supplemented his discovery responses and identified the witness on the last day allowed by the scheduling order. Lee also provided information about his expert's anticipated rebuttal testimony. Nevertheless, the trial court excluded Lee's expert from testifying, explaining:

> [E]ach time we had a scheduling order put in place I had a conference with the lawyers and I let them set the schedule. I said to both sides, when can you be ready, when can you have this done, when can you have that done, I said – and this last time, I said, look, guys, this is the last go-round. You've got to tell me what you can accomplish, when you can get this done, so this – that scheduling order that I entered on April the 5th that put it on this trial calendar coming up on August the 7th, I let those lawyers pick those dates, and I told them when they were picking them there wasn't going to be any further extensions unless you had legal grounds for a continuance, and I simply don't hear any. *I'm sympathetic to your position [as Lee's attorney], Mr. Atkinson; you didn't create the problem, but neither did I. And so I am going to exclude the witnesses that were not properly identified within the parameters of the scheduling order*, and we are going to go forward with the trial on August the 7th.

(Emphasis supplied.)

At trial, Smith's expert provided extensive, unrebutted testimony to support Smith's claim for lost wages. During closing argument, Smith's counsel emphasized Lee's failure to rebut this testimony. The jury returned a $2,000,000 general verdict for Smith.

Lee appealed, and a divided Court of Appeals affirmed the trial court's decision to exclude Lee's rebuttal expert from testifying at trial. *Lee v. Smith*, 346 Ga. App. 694 (1) (816 SE2d 784) (2018); id. at 700 (Ray, J., dissenting). We granted Lee's petition for a writ of certiorari to determine the propriety of the Court of Appeals' ruling on this issue.[3]

2. In civil cases, a trial court has "broad discretion . . . to control the sequence and timing of discovery, see OCGA § 9-11-26 (d), and to establish pretrial procedure, see OCGA § 9-11-16 (a) (5)." (Citation and punctuation omitted.) *Rivera v. Washington*, 298 Ga. 770, 777-778 (784 SE2d 775) (2016). This broad discretion extends to the

---

[3] We do not address the Court of Appeals' other holdings.

setting of pretrial scheduling deadlines and other matters of case management. See, e.g., *Martin v. Fulton County Bd. of Registration & Elections*, 307 Ga. 193, 211 (2) (835 SE2d 245) (2019) ("[T]rial courts have broad discretion over . . . scheduling and discovery-related issues."). Once a trial court has properly exercised its discretion to enter an order setting a scheduling deadline, compliance with that order is of paramount importance, as a party's failure to comply with it could subject that party to sanctions, including the harsh sanction of excluding a proffered witness from testifying at trial. See *Ambler v. Archer*, 230 Ga. 281, 289 (1) (196 SE2d 858) (1973) ("It, undoubtedly, must lie within the power of the court to impose appropriate sanctions to make effective its pre-trial orders."). See also, e.g., *Johnson v. Mammoth Recreations*, 975 F2d 604, 610 (3) (9th Cir. 1992) ("A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.") (citation and punctuation omitted).

However, a trial court's discretion in fashioning an appropriate sanction for a party's failure to comply with a proper scheduling,

11

discovery, or case management order is not unlimited. As this Court has previously explained, "no harsher sanctions should be imposed than are necessary to vindicate the court's authority." *Ambler*, supra, 230 Ga. at 289 (1). Indeed, a trial court can abuse its discretion by imposing a sanction that is too harsh under the given circumstances of a case. Id. See also *Carder v. Racine Enterprises*, 261 Ga. 142 (2) (401 SE2d 688) (1991) (where defendants failed to participate in production of pretrial order, trial court abused its discretion by precluding defense from presenting evidence at trial to contest liability, as such a sanction was too harsh in light of other appropriate sanctions that were available). This is so because a trial court must exercise some *discretion* by evaluating the specific circumstances surrounding a party's noncompliance with an order to properly determine what, if any, sanction is necessary to provide fairness to the parties and to vindicate the court's authority. If the late identification of a witness were the only factor to be considered regarding the exclusion of a witness' testimony, a trial court would have no need to exercise any discretion at all in making a decision

12

to exclude a late-identified witness, because the late identification *alone* would *automatically* justify the exclusion of that witness. In this regard, in instances where the trial court defaults to the most extreme sanction available based *solely* upon a party's failure to meet a deadline in a scheduling order without considering any other factors, that court will have abused its discretion. See *Ambler*, supra, 230 Ga. at 289 (1) (trial court abused its discretion by refusing to permit counsel for caveators to call any witness other than the caveators themselves, as sanction was too harsh even after counsel's failure to attend second pretrial hearing and failure to formulate pretrial order in cooperation with opposing counsel). See also *The Kroger Co. v. Walters*, 319 Ga. App. 52, 60 (2) (b) (735 SE2d 99) (2012) ("In a civil suit it is an abuse of discretion to exclude a relevant witness solely on the ground that the witness was not identified during discovery or in a timely manner.").[4]

Here, the parties disagree about whether the trial court

---

[4] Judge Ray's dissent in the Court of Appeals' opinion relied on *Walters*, which the majority did not address.

excluded Lee's rebuttal expert based solely on the late identification of the witness. But the trial court stated that, even though Lee "didn't create the problem," the court was going to exclude the rebuttal expert because he was "not properly identified within the parameters of the scheduling order." Under such circumstances, we conclude that the trial court excluded the witness based solely on Lee's late identification of him. Consequently, the trial court abused its discretion. See *Carder*, supra, 261 Ga. at 144 (2); *Ambler*, supra, 230 Ga. at 289 (1). See also *The Kroger Co.*, supra, 319 Ga. App. at 60 (2) (b).

We also conclude that the trial court's decision to exclude Lee's rebuttal expert from testifying at trial was harmful to Lee. See, e.g., *Carder*, supra, 261 Ga. at 142 (1) ("Harm as well as error must be shown to authorize a reversal by this court.") (citation and punctuation omitted). Indeed, Smith's expert, Dagen, provided extensive and unrebutted testimony concerning the millions of dollars that Smith could have made had it not been for the injuries that he sustained as a result of the car accident. Moreover, Smith's

attorney was able to capitalize on this unrebutted testimony in his closing argument. Based on the foregoing, we cannot say that the exclusion of Smith's rebuttal expert was harmless. See, e.g., *Carder*, supra, 261 Ga. at 144 (2) (sanction of forbidding defendants from presenting evidence to contest liability was erroneous and harmful); *The Kroger Co.*, supra, 319 Ga. App. at 60 (2) (b) (even where negligence had been established, exclusion of late-identified witness was harmful, as witness could have helped to rebut negative presumption raised by alleged spoliation of evidence).

Accordingly, we reverse the portion of the decision of the Court of Appeals upholding the trial court's decision to exclude Lee's rebuttal expert. Moreover, to the extent that other cases from the Court of Appeals can be read to support the proposition that a trial court does not abuse its discretion by excluding a witness solely because the witness was identified after the deadline set in a scheduling, discovery, and/or case management order, those cases are overruled. See, e.g., *Moore v. Cottrell, Inc.*, 334 Ga. App. 791 (2) (780 SE2d 442) (2015); *Kohler v. Van Peteghem*, 330 Ga. App. 230

(3) (767 SE2d 775) (2014); *Vaughan v. WellStar Health System*, 304 Ga. App. 596, 601-602 (3) (696 SE2d 506) (2010); *Collins v. Dickman*, 295 Ga. App. 601, 603-604 (1) (672 SE2d 433) (2008).

3. However, this does not end our inquiry, as we must now turn to the second question of what other factors the trial court should have considered prior to excluding the late-identified witness in this case. To answer this question, we look to rulings from other jurisdictions for guidance, as our own case law and Georgia statutes do not directly address all of the specific factors that a trial court should consider. See, e.g., *Slade v. Rudman Resourcess* 237 Ga. 848, 850 (230 SE2d 284) (1976) (surveying authority from other jurisdictions to find guidance on issue of first impression in Georgia).

In this regard, the Eleventh Circuit and other courts have indicated that certain factors other than untimeliness should be considered when a trial court is determining whether the harsh sanction of excluding a late-identified witness from testifying is appropriate. See, e.g., *Knight v. Miami-Dade County*, 856 F3d 795, 811 (II) (B) (11th Cir. 2017) ("In evaluating whether the exclusion of

16

a late witness was an abuse of discretion, [the] court should consider [1] the explanation for the failure to disclose the witness, [2] the importance of the testimony, and [3] the prejudice to the opposing party if the witness [is] allowed to testify.") (citation and punctuation omitted); *Citizens Bank v. Ford Motor Co.*, 16 F3d 965, 966 (II) (8th Cir. 1994) ("The factors courts consider when determining whether to exclude witnesses not made known in compliance with a pretrial order are: (1) the reason the party fails to name the witness; (2) the importance of the testimony; (3) the amount of time the opposing party needs to properly prepare for the testimony; and (4) whether a continuance would in some way be useful.") (citations and punctuation omitted); *Ammons v. Bonilla*, 886 SW2d 239, 243 (Tenn. Ct. App. 1994) (same); *Geiserman v. MacDonald*, 893 F2d 787, 791 (II) (5th Cir. 1990) (discretion to exclude late-identified witness is reviewed on appeal based on "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such

17

prejudice"); *Jumper v. Hawkins*, 558 SE2d 911, 916 (S.C. Ct. App. 2001) ("[I]n the face of a pre-trial order mandating the disclosure of a witness by a certain date, a trial judge is required to consider and evaluate the following factors before imposing the sanction of exclusion of a witness: (1) the type of witness involved; (2) the content of the evidence emanating from the proffered witness; (3) the nature of the failure or neglect or refusal to furnish the witness' name; (4) the degree of surprise to the other party, including the prior knowledge of the name of the witness; and (5) the prejudice to the opposing party."). A common thread among these cases is that a party's explanation for the late identification, the importance of the witness' testimony, the prejudice to the opposing party, and the availability of less harsh remedies (such as granting a continuance) are the types of matters that a trial court should consider before deciding to exclude a late-identified witness.

Based on this persuasive authority, and based on our own precedent instructing that a trial court impose "no harsher sanctions . . . than are necessary to vindicate the court's authority" (*Ambler*,

18

supra, 230 Ga. at 289 (1)), we hold that, when determining whether to exclude a witness who was not timely identified in compliance with a pretrial scheduling, discovery, or case management order, a trial court should consider: (1) the explanation for the failure to disclose the witness, (2) the importance of the testimony, (3) the prejudice to the opposing party if the witness is allowed to testify, and (4) whether a less harsh remedy than the exclusion of the witness would be sufficient to ameliorate the prejudice and vindicate the trial court's authority.[5]

We conclude that the consideration of these factors will allow a trial court to properly balance the circumstances surrounding a party's failure to comply with a pretrial scheduling, discovery, or case management order with the trial court's need to fashion an appropriate remedy when a party fails to comply with such an order. In some cases, a continuance or out-of-time discovery may be more

---

[5] These factors should be considered in all cases where a witness is disclosed in an untimely manner in violation of a court-imposed deadline, but additional factors might also be appropriate to consider in unusual or extraordinary cases.

19

appropriate than imposing a sanction; or even "[c]ontempt may at times be proper[.]" (Citation and punctuation omitted.) *Ambler*, supra, 230 Ga. at 289 (1). See also *Martin*, supra, 307 Ga. 211 (2) ("[T]rial courts have broad discretion over . . . scheduling and discovery-related issues."). Trial courts must remain mindful that only "in an extreme case [should] the plaintiff's action . . . be dismissed or the defendant [be] precluded from introducing evidence relating to his defense, [because] these remedies are too drastic if less harsh sanctions are appropriate." (Citation and punctuation omitted.) *Ambler*, supra, 230 Ga. at 289 (1). See also *Geiserman*, supra, 893 F2d at 791 (II) (upholding exclusion of expert witness after evaluating the feasibility of other remedies and considering plaintiff's actions in missing two court-imposed deadlines).

4. While the trial court here erred by excluding Lee's rebuttal expert solely based on his late identification (and the Court of Appeals erred in affirming that ruling on the same ground), "[t]he question that remains is what relief should be ordered to remedy" this error. *Waller v. Georgia*, 467 U. S. 39, 49 (II) (C) (104 SC 2210,

81 LE2d 31) (1984). In this regard, even though the trial court excluded the expert on an improper basis, we cannot say on the current record that the trial court could not have come to the same conclusion if it had properly exercised its discretion by considering the factors outlined above. The parties should be given an opportunity to present evidence and argue how the factors we have now identified apply to this case, and the trial court must be given an opportunity to consider this issue again in light of our decision. If, after considering such factors, the trial court concludes again that Lee's expert witness should have been excluded, a new trial would be unnecessary, but that decision would still be subject to review on appeal for an abuse of discretion. See *Waller*, supra, 467 U. S. at 50 (II) (C) (reversing trial court decision to close motion to suppress hearing, remanding case for trial court to apply proper legal test, and concluding that "[a] new trial need be held only if" the defendant obtained the relief sought); *Atkins v. State*, 254 Ga. 641, 642 (331 SE2d 597) (1985) (case remanded for new suppression hearing rather than new trial where trial court needed to determine whether

21

all elements had been met to show that minor had given valid consent for search of mother's house). If, however, the trial court concludes that the expert should not have been excluded under the circumstances, a new trial should be ordered. See *Waller*, supra, 467 U. S. at 50 (II) (C).

Accordingly, we remand this case to the Court of Appeals with the direction that it vacate the trial court's ruling and remand this case to the trial court with the direction that the court reconsider its ruling in light of the factors set forth above.

*Judgment reversed in part, and case remanded with direction. All the Justices concur, except Blackwell, J., who concurs in the judgment and in Divisions 1, 2 and 3.*

DECIDED FEBRUARY 10, 2020.
Certiorari to the Court of Appeals of Georgia — 346 Ga. App. 694.
*Swift, Currie, McGhee & Hiers, Bradley S. Wolff, David M.*

*Atkinson*, for appellant.

*Willis McKenzie, Matthew C. Alford, Nathan D. Cronic, Sr.*, for appellee.