**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 21, 2023**

# In the Court of Appeals of Georgia

A23A0267. SMAHA et al. v. THE MEDICAL CENTER OF CENTRAL GEORGIA, INC.

MCFADDEN, Presiding Judge.

In this medical malpractice case, the appellants, as surviving children of the decedent, contest the disqualification of their expert witness and the grant of summary judgment in favor of the appellee medical center. We find that the trial court did not abuse its discretion in disqualifying the expert witness, and we further conclude that, absent such expert testimony, the trial court correctly granted summary judgment to the medical center since there was no genuine issue of material fact. So we affirm.

1. *Facts and procedural posture.*

In October 2013, Marie Smaha had surgery at the Medical Center of Central Georgia to remove her left kidney. Several days later, while recovering in the hospital, Smaha suffered from internal bleeding and died. Smaha's three surviving children filed a complaint against the medical center alleging malpractice by the nurses caring for Smaha in that they had failed to notify her surgeon of the signs and symptoms of her internal bleeding. Attached to the complaint was an affidavit of Martin Evans, M. D., who opined that the nurses had breached the accepted standard under similar circumstances by failing to identify and give appropriate notice of the signs and symptoms of Smaha's post-surgical bleed.

The medical center moved to disqualify Dr. Evans on the basis that he was unqualified to render nursing standard of care opinions because he had not supervised, taught, or instructed nurses as required by OCGA § 24-7-702 (c) (2) (D); and the medical center also moved for summary judgment. The trial court granted the motion to disqualify and granted summary judgment in favor of the medical center, concluding that without Dr. Evans' testimony, the plaintiffs were unable to establish that the nurses had breached the applicable standard of care. The plaintiffs appeal, arguing that it was error for the trial court to disqualify their expert witness and grant summary judgment.

2

2. *Expert testimony.*

The admissibility of expert testimony is "controlled by OCGA § 24-7-702 (Rule 702)." *Orr v. SSC Atlanta Operating Co.*, 360 Ga. App. 702, 703 (1) (860 SE2d 217) (2021) (punctuation omitted).

> This Code section requires that the trial court act as gatekeeper to ensure the relevance and reliability of expert testimony. In this role, the trial court assesses both the witness' qualifications to testify in a particular area of expertise and the relevancy and reliability of the proffered testimony. We review a trial court's determination under OCGA § 24-7-702 for an abuse of discretion. Finally, the party seeking to rely on the expert bears the burden of establishing that his testimony is reliable within the meaning of the statute.

*Fireman's Fund Ins. Co. v. Holder Constr. Group*, 362 Ga. App. 367, 371 (1) (a) (868 SE2d 485) (2022) (citations and punctuation omitted).

In this case, the appellants sought to establish that Dr. Evans' testimony as to the nursing standard of care was reliable within the meaning of subsection (c) (2) (D) of Rule 702. That subsection sets forth an exception to the general rule that an expert must be in the same profession as the defendant whose conduct is at issue in that it permits a physician to qualify as an expert as to non-physician health care providers if he "has knowledge regarding the relevant standard of care as a result of having supervised, taught, or instructed such non-physician health care providers." *Hankla*

3

*v. Postell*, 293 Ga. 692, 694-695 (749 SE2d 726) (2013) (punctuation omitted). The subsection provides, in pertinent part:

> Notwithstanding any other provision of this Code section, an expert who is a physician and, as a result of having, during at least three of the last five years immediately preceding the time the act or omission is alleged to have occurred, supervised, taught, or instructed nurses, . . . has knowledge of the standard of care of that health care provider under the circumstances at issue shall be competent to testify as to the standard of that health care provider.

OCGA § 24-7-702 (c) (2) (D).

"To determine whether an expert is qualified under this provision, Georgia courts examine both the area of specialty at issue and what procedure or treatment was alleged to have been negligently performed, both of which are dictated by the complaint." *Orr*, supra at 704-705 (1) (citations and punctuation omitted). Based on the allegations in the appellants' complaint, the question in this case "is what evidence was before the trial court that Dr. [Evans had supervised, taught, or instructed nurses during the five years before Smaha's death so that he was] qualified to opine on the standard of care of nurses pertaining to [identifying and reporting signs and symptoms of post-surgical internal bleeding] in patients[.]" Id.

At the motions hearing, Dr. Evans admitted that during the pertinent five-year period he was not on the faculty of and had not taught at a nursing school. He also

4

deposed that he did not supervise nurses at a hospital on a day-to-day basis. Rather, the appellants cited the doctor's role as the chair of a medical center's quality control council, which was an administrative job that included evaluating certain nursing metrics and recommending changes to comply with the standard of care, and several lectures that he gave to nurses. But during his hearing testimony, Dr. Evans conceded that as committee chair he did not personally teach nurses about hospital policies, which instead was the responsibility of nurse managers. With regard to his lectures, he testified that they focused mostly on nursing documentation, but also discussed expectations regarding the standard of care and communicating with doctors.

But the appellants have not cited evidence on the specific issue in this case — evidence showing how and when, during at least three of the five years preceding Smaha's death, Dr. Evans supervised, taught, or instructed nurses such that he was qualified to opine on the standard of care for nurses to identify signs and symptoms of post-surgical internal bleeding and report them to the surgeon. We have reviewed all of the record citations in the appellants' brief supporting their claims, and none of them direct us to any such pertinent evidence. Many of the citations are not to evidence, and instead are to a trial court brief; while the references to evidence, including affidavit and deposition testimony, do not address the dispositive issue

regarding supervising and instructing nurses on identifying and reporting internal bleeding in circumstances like those in this case. "Even if it could be said that Dr. [Evans'] affidavit and deposition create a question concerning his supervision of [and lectures to] nurses, the trial court, acting as gatekeeper, was authorized to resolve this conflict to conclude that [his] experience was insufficient to satisfy the statutory requirements." *Orr*, supra at 706 (1) (a). See also *Vaughan v. WellStar Health Systems*, 304 Ga. App. 596, 600 (1) (696 SE2d 506) (2010), overruled on other grounds, *Lee v. Smith*, 307 Ga. 815, 823 (2) (838 SE2d 870) (2020); *McKuhen v. TransformHealthRX*, 338 Ga. App. 354, 360 (1) (790 SE2d 122) (2016) (physical precedent). The trial court therefore did not abuse its discretion in granting the motion to disqualify Dr. Evans as an expert on the applicable nursing standard of care. See *Pendley v. Southern Regional Health Sys.*, 307 Ga. App. 82, 89 (2) (704 SE2d 198) (2010) (no abuse of discretion in excluding testimony of doctor regarding specific nursing standard of care at issue).

3. *Summary judgment.*

The appellants have not set forth a separate enumeration regarding the trial court's grant of summary judgment, but simply conclude that it should be reversed because of the alleged error in the exclusion of the doctor's testimony. But given our

holding above that the trial court did not abuse its discretion in excluding such testimony, the appellants have shown no basis for reversing the grant of summary judgment.

*Judgment affirmed. Brown and Markle, JJ., concur*.